Rodney BURKHART, Plaintiff–Appellant,

v.

Otis R. BOWEN, Defendant–Appellee.

No. 87–3930.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1988.

Decided Sept. 7, 1988.

Marilyn K. Odell, Eugene, Or., for plaintiff-appellant.

Richard H. Wetmore, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.

Before GOODWIN, Chief Judge, ALARCON and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Rodney Burkhart ("Burkhart") appeals the district court's order affirming the decision of the Secretary of Health and Human Services ("Secretary") to deny Burkhart disability insurance and supplemental security income ("SSI") benefits. Burkhart argues that the Secretary applied an improper legal standard and that the Secretary's decision is not supported by substantial evidence. We reverse and remand for vocational testimony.

## I.

Burkhart was 44 years old when he applied for disability and SSI benefits in June, 1985. He had been a truck driver for over 20 years.

In July, 1979, Burkhart visited Dr. Norris–Pearce, a neurologist, to complain of blurred vision. Dr. Norris–Pearce summarized his pertinent findings as left papilledema, weakness of the left sixth cranial nerve, questionable weakness of the left wrist extensors and a nuclear brain scan within normal limits.

In February, 1980, Burkhart saw Dr. Anderson, a neurological surgeon, who diagnosed retrobulbar neuritis.

In March, 1980, Burkhart saw Dr. Myers, who performed a complete neurological examination. Dr. Myers found all testing to be within normal limits—including an EEG —and diagnosed optic (retrobulbar) neuritis in remission. He also opined that there did not appear to be any evidence of multiple sclerosis.

Four months later, another physician, Dr. Johnson agreed with the diagnosis of optic neuritis. In a detailed report Dr. Johnson summarized the testing which had been done, the test results, and Burkhart's medical history. He also noted Burkhart's complaints of occasional chest pain, shortness of breath, edema in his hand, continued impaired vision, depression and headaches. He opined that "[f]or the present he is considered unemployable because of his visual defect until acuity can be proven to be present at satisfactory levels."

Dr. Johnson continued to see Burkhart for monthly visits until March, 1981. At that time he again reviewed Burkhart's condition and concluded that, overall, there had been little change. He wrote that the optic neuritis was probably associated with multiple sclerosis, and that Burkhart had continuing neck pain. The diagnosis in January, 1981 had been depression, tension sufalgia, cervical myositis, probable multiple sclerosis and optic neuritis. Dr. Johnson had prescribed medication for depression and muscle spasms at that time. One week later the neck pain and depression had improved, but by February both symptoms were back. By March, 1981, however, Dr. Johnson wrote that vision was improved with bifocals, and that the depression and neck spasms showed improvement.

In April, 1981, Dr. Patterson, a neurologist, described the findings of a neurological exam and then summarized his overall impression of "[p]ast history of left optic neuritis, now improved with good visual acuity at the present time." Dr. Patterson also noted Burkhart's complaints of hand numbness.

The following month, however, a different physician, Dr. Harper diagnosed optic neuritis with legal blindness and, without explanation or documentation of any clinical findings, concluded that it was untreatable. Dr. Harper reiterated his diagnosis in November, 1983, again without any explanation.

Burkhart applied for SSI on May 31, 1983. His claim was denied on August 11, 1983, and he did not appeal.

In September, 1984, Dr. Calhoun, an opthalmologist, performed an eye examination which revealed "[Burkhart's] visual acuity is best corrected to 20/20 in each eye." Dr. Calhoun's impression was that Burkhart had old optic neuritis in the left eye, proptosis in left eye of undetermined etiology, hyperopia and astigmatism with presbyopia and plepharitis. Dr. Calhoun also indicated that he had previously seen Burkhart in February, 1980.

Burkhart filed for both disability insurance and SSI benefits on June 25, 1984.

He claimed that he had been disabled since February 2, 1984 due to legal blindness and multiple sclerosis. Burkhart's claim was denied on December 5, 1984. He did not appeal.

In May, 1985, Dr. Harper again diagnosed optic neuritis and noted Burkhart's complaints of blurred vision, headaches, aggravated neuritis with stress, unpredictable periods of blindness. His opinion was that "I do not see [Burkhart] returning to work any time in the near future." The next month, however, Dr. Patterson noted that Burkhart's vision was 20/20 in the right eye, 20/25 in the left eye with eyeglasses and his impression was "[p]ast history of possible left optic neuritis, now improved with good visual acuity at present."

Burkhart again filed for benefits on May 15, 1985. Burkhart's applications were denied initially, and on reconsideration.

Burkhart's insured status for disability benefits expired on September 30, 1985. On October 10, 1985, Burkhart was admitted to Mercy Medical Center with myocardia infarction.

At Burkhart's request a hearing was held before an ALJ on November 19, 1985. Both Burkhart—who was represented by counsel—and his wife testified to Burkhart's vision problems. His wife also told of the pain that accompanied Burkhart's periods of blurred vision. The ALJ left the record open after the hearing to receive into evidence a letter from Dr. Harper. In the November 21, 1985 letter addressed to Burkhart's attorney, Dr. Harper wrote that Burkhart had been unemployable—in either heavy or sedentary work—since at least 1982 because of: optic neuritis probably caused by systemic atherosclerotic disease; bouts of unconsciousness and confusion; decreased visual acuity; vulnerability to stress which would cause vascular spasms and near stroke conditions known as transient ischemic attack; and "depression and memory changes" for several years possibly due to either a loss of self esteem or poor circulation.

The ALJ issued his decision denying Burkhart benefits on April 16, 1986. He concluded that there was not "good cause"

to reopen the prior determination denying Burkhart benefits and, therefore, the current application was concerned only with disability since December 5, 1984. He then found that Burkhart was unable to return to his former work but that he was not disabled. Burkhart's request for review by the Appeals Council was denied. The district court affirmed the Secretary's decision on May 16, 1987. Burkhart timely appealed. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.

## II.

This court must uphold the Secretary's determination that a claimant is not disabled if the Secretary applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir.1986). The entire record must be considered, weighing both the evidence that supports and detracts from the Secretary's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986).

The claimant must demonstrate that his or her disability is (1) the result of an abnormality that can be shown by medically acceptable laboratory or clinical diagnostic techniques and (2) expected to last for a continuous period of at least twelve months or result in death. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.1984). Claimants must prove they became disabled prior to the expiration of their insured status. *See, e.g., Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir.1984).

## III.

Burkhart argues that (a) the Secretary erred by not reopening Burkhart's prior determination denying benefits; (b) the Secretary failed to apply the proper legal standard regarding the weight given to the testimony of Burkhart's treating physician; (c) the Secretary erred by not considering Burkhart's complaints of pain and by not considering his impairments in combination. These contentions lack merit.

## A.

Ordinarily, this court cannot review the Secretary's refusal to reopen a prior decision denying benefits. *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977). If, however, a claimant challenges the Secretary's decision on constitutional grounds, this court has jurisdiction. *Id.* at 108–09, 97 S.Ct. at 985–86.

■ Burkhart argues that his due process rights were violated when the ALJ questioned the credibility of Dr. Harper's November 21, 1985 letter because the letter had been solicited by Burkhart's counsel. He alleges that the ALJ's action denied him "his statutory right to counsel". This contention is wholly without logic or merit. The ALJ's comment was not only a permissible credibility determination given the evidence before the ALJ, it was also not the only reason the ALJ gave for rejecting Dr. Harper's statements. Since Burkhart's argument presents no colorable constitutional claim, he does not fall within the *Califano* exception.

■ Burkhart also argues that the prior determination must be reopened under the Social Security Disability Benefits Reform Act of 1984 ("the Act"). Under the Act any initial determination made after October 9, 1984 and before August 28, 1985 that a claimant is not disabled by reason of a mental impairment must be reconsidered under revised regulations. Pub.L. No. 98–460, § 5(c)(1), 98 Stat. 1794, 1801–2 (1984); *see also, Mazzola v. Secretary of H & HS,* 795 F.2d 222, 524 (1st Cir.1986). Since Burkhart's initial denial was on December 5, 1984, he argues that the prior determination must be reopened. His contention lacks merit.

Burkhart's 1984 claims of disability were based on legal blindness and multiple sclerosis. The prior determination reviewed only those conditions. Neither Burkhart's application nor the disability examiners determination mentioned mental impairment. Thus his case does not fall within the Act.

Since Burkhart does not fall within the exceptions provided by the Act or *Califano,* this court does not have jurisdiction to review the ALJ's decision not to reopen Burkhart's December 5, 1984 unfavorable determination. Thus this court can only review the Secretary's determination that Burkhart was not disabled during the period December 5, 1984 through September 30, 1985—the date his insured status expired.

## B.

The medical opinion of a claimant's treating physician is entitled to special weight. *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. June 13, 1988). If the ALJ disregards the treating physician's testimony he or she

> must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.... The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.

*Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir.1986); *see also Embrey,* 849 F.2d at 421.

■ Burkhart fails to explain why Dr. Harper's opinion deserves greater weight than the opinions and conclusions of his other "treating physicians." Both Drs. Calhoun and Patterson have seen Burkhart for a number of years. Dr. Calhoun indicated Burkhart's visual acuity is best corrected to 20/20 and Dr. Patterson confirmed this measurement and also noted that Burkhart's optic neuritis is "now improved." The ALJ carefully detailed these facts and the arguably "conflicting clinical evidence."

The ALJ rejected Dr. Harper's uncontroverted opinion that Burkhart was disabled due to depression. While "[t]he subjective judgments of treating physicians are important," *Embrey,* 849 F.2d at 421, Dr. Harper provided nothing more than a statement of his unsupported opinion. There was no description—either objective or subjective—of medical findings, personal observations or test reports upon which Dr. Harper could have arrived at his conclu-

sion.[1]  *Cf. id.* at 421 (treating physician provided at least some objective observations and laboratory and x-ray testing in addition to subjective opinions). Thus there was no error regarding the weight accorded the testimony of Dr. Harper.

### C.

Burkhart's final arguments that his evidence of pain was not considered and that his impairments were not considered in combination similarly lack merit.

Burkhart himself did not testify to a single experience of pain. Thus the ALJ had no testimony to reject.[2]

The ALJ did consider Burkhart's impairments in combination.

### IV.

Burkhart also argues that the Secretary erred by not taking testimony from a vocational expert. We agree.

Once a claimant establishes a prima facie case of disability by demonstrating the claimant cannot return to his or her former employment, the burden then shifts to the Secretary to show that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience. *Hoffman,* 785 F.2d at 1425. The Secretary can satisfy this burden by either (1) applying the Medical–Vocational Guidelines ("grids") in appropriate circumstances or (2) taking the testimony of a vocational expert. *See, Desrosiers v. Secretary of H & HS,* 846 F.2d

573, 578 (9th Cir.1988) (Pregerson, J. concurring); *see also, Howard v. Heckler,* 782 F.2d 1484, 1486 n. 1 (9th Cir.1986) (where claimant had significant nonexertional limitations "the Secretary could not rely on the grids but was required to put on a vocational expert").

▉ The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment. *Desrosiers,* 846 F.2d at 578 (Pregerson, J. concurring). They may be used, however, "only when the grids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985). When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. *Desrosiers,* 846 F.2d at 577. In such instances, the Secretary must take the testimony of a vocational expert, *Jones,* 760 F.2d at 998, and identify specific jobs within the claimant's capabilities.[3]  *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984). Thus, the grids will be inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present.

Non-exertional limitations are limitations that do not directly affect a claimant's strength. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d), (e); *Desrosiers,* 846 F.2d at 579 (Pregerson, J. concurring). Non-exer-

---

1. The ALJ also noted that the only other indication in the record that Burkhart suffered from depression was from early 1981. The ALJ correctly rejected this evidence on the grounds that it is not probative both because it is prior to the relevant time period and inconclusive since the last notation was that the depression was improved.

2. The ALJ wrote that the record reveals treatment for back pain on May 19, 1983 and an episode of eye pain on February 22, 1984. The ALJ rejected this evidence because "it is not material evidence of any long term disability" and, in any event, relates back to the time period prior to December 5, 1984. These reasons are specific and legitimate. *See Varney v. Secretary of H & HS,* 846 F.2d 581, 584 (9th Cir.1988); *Jones,* 760 F.2d at 997. Burkhart argues that his

wife's testimony to his eye pain should constitute substantial evidence of pain. Without at least corroborating evidence from Burkhart himself, the ALJ need not address her singular statement.

3. Testimony of vocational experts in disability determination proceedings typically includes one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ asks the expert whether, given certain assumptions about the claimant's capabilities, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy. The expert's testimony is only valuable to the extent that the question accurately portrays the claimant's individual physical and mental impairments.

tional limitations include those "mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations," *Desrosiers,* 846 F.2d at 579 (Pregerson, J., concurring), that affect a claimant's ability to work.

In this case, the ALJ found that Burkhart was unable to return to his former work as a truck driver. Thus, the burden shifted to the Secretary. The ALJ further concluded that the grids were not applicable because Burkhart's limitations were not merely exertional. Rather, he specifically found that Burkhart cannot perform the full range of sedentary and light work because of significant mental and manipulative nonexertional limitations.[4] Having made these findings the ALJ was thus required to take the testimony of a vocational expert. He did not do so.

Rather, the ALJ assumed the role of vocational expert himself. He wrote that Burkhart was not suited for work on an assembly line or in a people crowded or hurried setting. He suggested instead that Burkhart could do "yard and lawn maintenance" or be a "watchman or security monitor." In addition, the ALJ added that even after excluding those jobs that would require either placement in an unsuitable environment or tasks that Burkhart was unable to perform due to his non-exertional impairment, that "there are hundreds of jobs left which Mr. Burkhart can do."

These speculations are based upon information outside the record. By so relying, the ALJ has effectively deprived Burkhart of an opportunity to cross-examine a witness or rebut testimony. Thus the ALJ's determination was both lacking in evidentiary support and made contrary to the standard procedure. Since the Secretary has not satisfied its burden and the grids are inappropriate because Burkhart has nonexertional limitations that significantly limit the range of work he may perform, we remand this case to the Secretary to take the testimony of a vocational expert.

## CONCLUSION

The Secretary has not shown that Burkhart can perform other types of work in the national economy. Since the grids are not applicable to Burkhart's case the Secretary may satisfy this burden only by taking the testimony of a vocational expert. Thus we reverse and remand for a hearing to identify specific work, if any, that Burkhart could perform at the relevant time.

REVERSED AND REMANDED.

**4.** The ALJ found that Burkhart must avoid stressful environments and cannot use his hands in fine manipulation on a regular basis. Moreover, Burkhart's vision problems constitute an additional non-exertional limitation that would prevent use of the grids in his case. *See Desrosiers,* 846 F.2d at 577; *Jones,* 760 F.2d at 998.