Scott A. OSENBROCK, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant–Appellee.

No. 99–35376.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 5, 2000*

Filed March 2, 2001

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Denice L. Patrick, Law Office of Denice L. Patrick, Lynnwood, Washington, for the plaintiff-appellant.

Renee McFarland, Social Security Administration, Office of General Counsel, Seattle, Washington, for the defendant-appellee.

Before: ALARCON, FERGUSON and McKEOWN, Circuit Judges.

Opinion by Judge ALARCON; Dissent by Judge FERGUSON

ALARCON, Circuit Judge:

Scott Osenbrock ("Osenbrock") appeals from the order affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his claim for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act. Mr. Osenbrock contends that the administrative law judge's ("ALJ") determination that he was capable of performing substantial gainful work that exists in the national economy was not supported by substantial evidence. We affirm because we conclude that substantial medical evidence supports the ALJ's finding that Mr. Osenbrock is capable of performing substantial gainful work that exists in the national economy.

I

Mr. Osenbrock was born on July 28, 1958. He dropped out of high school after the 11th grade to enter the Air Force.

In 1987, he shot himself in the left shoulder with a shotgun. The resultant injury did not affect the use of his right hand. He testified that he has use of his left hand for "normal day stuff" but when he "was still picking stuff up, it would slip out sometimes." Notwithstanding the injury to his left arm, Mr. Osenbrock was able to perform the duties of a mill manager at State Roofing.

Mr. Osenbrock sustained a series of on-the-job injuries to his back over a period of years prior to October 12, 1992. After each back injury, he received treatment and returned to work. On October 12, 1992, he reinjured his back while lifting a cedar block weighing from 60 to 70 pounds while employed at State Roofing. After this injury, Mr. Osenbrock stayed home until his back pain was so severe that he reported to the emergency room of the Valley General Hospital on October 19, 1992. He was diagnosed as having an acute low back strain and muscle spasm. He was treated with Percodet and Robaxin.

He returned to work, but on January 7, 1993, because of continuing problems with his back, he reported to the office of Bruce A. Rolfe, M.D., an orthopedic surgeon at the Washington Sports Medicine Clinic. Dr. Rolfe recommended a magnetic resonance imaging ("MRI"). The MRI revealed that Mr. Osenbrock had a mild L3–4 circumferential disc bulge, and mild paracentral disc herniations at L4–5 and L5/S1. He has been unable to work as a mill manager since January 18, 1993 due to "sever[e] pain in back [and] right leg from two herniated discs."

Sam Cullison, M.D., treated Mr. Osenbrock on April 28, 1993 for back pain. Dr. Cullison noted that Mr. Osenbrock was obese and had significant drinking problems with heavy alcohol use. On May 13, 1993, Dr. Cullison examined Mr. Osenbrock and diagnosed him as having chronic back pain, chronic pain disorder, and a history of alcoholism and chronic back syndrome. On June 1, 1993, Dr. Cullison examined Mr. Osenbrock for chronic back pain. Dr. Cullison concluded that Mr. Osenbrock "was doing well and tolerating medicine" and could return to half-time light duty on June 3, 1993.

Mr. Osenbrock was involved in a jeep roll-over accident on July 4, 1993. On July 22, 1993, Mr. Osenbrock underwent an MRI of his lumbar spine. That MRI was compared to an MRI of Mr. Osenbrock's back performed on February 2, 1993. Jay Tsuruda, M.D., noted that "the study of the lumbar spine is stable. The size of the L3/4 bulge, central/right paracentral L4/5 disc herniation and right paracentral L5/S1 disc herniation are unchanged."

On August 13, 1993, Mr. Osenbrock went to Dr. Cullison complaining of back pain. Dr. Cullison diagnosed chronic back pain syndrome and alcoholism. Dr. Cullison recommended absolute alcohol abstinence.

Dr. Cullison examined Mr. Osenbrock on September 14, 1993 for depression and low back pain. Dr. Cullison noted that Mr. Osenbrock's depression was "of a fairly profound nature related to his injury." In a follow-up examination on September 27, 1993, he noted that Mr. Osenbrock was "having significant alcohol problems" and that he had been arrested for driving while under the influence of alcohol three times in the last six years. Dr. Cullison noted

that he was trying to get Mr. Osenbrock a referral to physical medicine and rehabilitation.

On November 6, 1993, Ron Brockman, D.O., an orthopaedic surgeon, and Edward De Vita, M.D., a neurologist, performed a Department of Labor and Industries evaluation of Mr. Osenbrock's condition. They noted that he was working part-time at light duty, and attending physical therapy two times a week. Mr. Osenbrock reported that he was consuming 60 to 80 drinks per week. They concluded that Mr. Osenbrock's present condition was the result of an aggravation of a pre-existing herniated disc in his lumbar spine.

On November 16, 1993, Michael Mallahan, M.D., an audiologist, performed a hearing test on Mr. Osenbrock. Dr. Mallahan reported that Mr. Osenbrock had "high frequency and speech range loss in both ears" and that he "may have difficulty hearing in normal family and social conversations."

Dr. Cullison examined Mr. Osenbrock on November 18, 1993 for low back pain. Dr. Cullison recommended that Mr. Osenbrock continue taking Toradol, Carafate, Prozac; and then initiate Trazadone. He also recommended that Mr. Osenbrock continue in his rehabilitation and consume no alcohol.

On November 29, 1993, Dr. Cullison noted that Mr. Osenbrock had missed four or five visits at the Center for Outpatient Rehabilitation at Providence Hospital in Everett and had been dismissed from the program. Dr. Cullison advised him to start Antabuse, begin attendance at Alcoholics Anonymous, and urged him to "get back on track" with the rehabilitation center.

Mr. Osenbrock was discharged on December 14, 1993 from the work conditioning program at the rehabilitation center because he stated he would be unable to continue treatment until January 8, 1994. He gave no reasons for discontinuing treatment. In a work conditioning discharge report, Brian Nitta, an occupational therapist, noted that Mr. Osenbrock had "demonstrated good body mechanics for lifting, carrying, and other work related activities."

On March 15, 1994, Dr. Cullison noted that Mr. Osenbrock had not been able to work since March 3, 1994, "due to massive increased pain without any new specific injury." On March 23, 1994, Dr. De Vita and Richard McCollom, M.D., conducted a Department of Labor and Industries evaluation. They concluded that Mr. Osenbrock was suffering from "[l]umbrosacral strain/sprain syndrome with evidence of MRI findings of L4–L5 and L5–S1 herniated disc, both pre-existing but aggravated by industrial injury." They recommended "full duty except for no heavy lifting greater than 75 pounds."

Dr. Cullison referred Mr. Osenbrock to James Mowry, M.D., for an opinion based on Mr. Osenbrock's worsening symptoms. Dr. Mowry saw Mr. Osenbrock on April 7, 1994. Dr. Mowry concluded that Mr. Osenbrock's physical exam is "highly unreliable," and that he was not "a surgical candidate under almost any circumstances." He ordered an electomyogram ("EMG") examination.

Santosh Kumar, M.D., conducted an EMG on April 8, 1994. His report states: "Normal EMG/NCV findings in his symptomatic low back and right leg indicate no evidence of acute or chronic L1–S2 radiculopathy, sciatic nerve deficit or peripheral heuropathy. His chronic right leg pain appears to have significant subjective component without any objective neurologic deficit."

On April 14, 1994, Dr. Mowry reported that Mr. Osenbrock "returned today with his EMG which shows absolutely no abnormalities. I do not think that surgery or any other diagnostic intervention is indicated."

Steven P. Jewitt, M.D., conducted a psychiatric evaluation of Mr. Osenbrock on June 8, 1994. He noted that "[m]ost significant in his psychiatric history is a prob-

lem with substance abuse." Dr. Jewitt reported that Mr. Osenbrock has been charged four or five times with domestic violence and arrested five times for "DWI." Dr. Jewitt also noted that "he is going to an alcohol recovery program and still drinking while not telling them." Dr. Jewitt concluded that "I do not believe depression can be considered for a significant factor, in that he is still drinking heavily and Prozac will have little if any benefit on someone who is drinking a fifth of whiskey several times a week." Dr. Jewitt also noted that "an alcohol rehabilitation program would be essential for a return to gainful employment."

Mr. Osenbrock filed an application for disability insurance benefits on April 20, 1994. R. Emil Hecht, M.D., evaluated Mr. Osenbrock's tinnitus condition on October 18, 1995. He concluded that "amplification devices ... may, in fact, help his ringing to some degree and assist in his communication abilities." (The record shows that Mr. Osenbrock did not purchase a hearing aid to relieve him of his tinnitus symptoms.)

Loren Ihle, M.D., became Mr. Osenbrock's treating physician in 1995. On February 1, 1996, twelve days prior to the hearing before the ALJ, Dr. Ihle submitted an evaluation form to the Washington State Department of Social and Health Services that stated Mr. Osenbrock was suffering from depression with a severity rating of "2." On the evaluation form, a severity rating of "2" is defined as follows: "Mild impairment-No significant interference with the ability to perform one or more basic work-related activities." The evaluation report also noted that while Mr. Osenbrock had a history of alcohol abuse, he was "not drinking recently to my knowledge."

Mr. Osenbrock's disability claim was denied on July 28, 1994. The Social Security Administration reconsidered the claim at Mr. Osenbrock's request and denied it on November 7, 1994. Mr. Osenbrock requested a hearing before an administrative law judge ("ALJ").

II

Three witnesses testified at the hearing before the ALJ on February 13, 1996. Mr. Osenbrock testified that "the main reason [I] lost [my] job [at State Roofing] was because I wasn't able to get work because of my back." When he attempted to return to work after he was injured on October 12, 1992, he found that he could not operate machinery, such as a forklift, or do any of the lifting.

Mr. Osenbrock also testified that Dr. Loren Ihle was treating him for his back and for depression. The main reasons he feels depressed is that his wife is leaving him and he can't "really do anything physical with [his] kids." In response to questions posed by his attorney, Mr. Osenbrock stated that the most significant side effect from the medication that he was prescribed is that it caused him to doze off and his mouth to dry up. He tries not to drive, because his medication causes him to fall asleep while driving. Mr. Osenbrock testified that his driver's license had been revoked because of traffic violations which included four or five arrests connected with drinking. Mr. Osenbrock stated he currently weighs about 265 to 270 pounds. He testified that his normal weight was 185 pounds.

Milton Schayes, M.D., an orthopedic surgeon, testified as a medical expert at the hearing. Based on his examination of Mr. Osenbrock's medical records and test results, Dr. Schayes opined that "Mr. Osenbrock has degenerative disc disease in his back." Dr. Schayes stated that Mr. Osenbrock did not meet a listed level of impairment. He also testified that he would "put quite a bit of limitation on his physical activity. Perhaps not so much due to the back condition as due to just some generalized physical reconditioning which I believe is likely to be the case." Dr. Schayes testified that Mr. Osenbrock's poor physical condition was the result of prior alcohol abuse and a lack of daily

exercise. Dr. Schayes testified that he agreed with Mr. Osenbrock's treating physician that the claimant was capable of sedentary work with a program of physical reconditioning, control of his alcohol consumption, and smoking. Dr. Schayes stated that with abstinence and daily exercise Mr. Osenbrock "would be capable of probably medium [capacity] work even with his back the way it is." Dr. Schayes testified that Mr. Osenbrock had "every potential for being in a lot better physical condition." Dr. Shayes also opined that "he should be in pretty good shape within three to six months."

. John Fontaine, a vocational expert ("VE"), testified that Mr. Osenbrock would be incapable of returning to any of his past work because of a physical impairment resulting from the injury to his back and the chronic pain he suffers in his back and right leg. In response to a hypothetical question posed by the ALJ, Mr. Fontaine testified that a person who has previously worked as a mill manager with Mr. Osenbrock's "orthopedic" impairments who can sit and stand at his option and sit for an hour can perform substantial gainful work that exists in the national economy as a timekeeper.

The ALJ concluded that Mr. Osenbrock was not disabled because he could perform modified light work existing in significant numbers in the national economy. The Social Security Administrators Office of Hearings and Appeals denied Mr. Osenbrock's request for review of the ALJ's decision. Accordingly, the ALJ's decision became the final decision of the Commissioner.

Mr. Osenbrock filed an appeal from the Commissioner's final decision before the district court. The District Court affirmed the Commissioner's decision. Mr. Osenbrock has timely appealed from the district court's order. We have jurisdiction pursuant to 28 U.S.C. § 1291.

III

In his appeal to this court, Mr. Osenbrock contends. that the decision of the Commissioner that Mr. Osenbrock is capable of performing work that is available in significant numbers in the national economy is not supported by substantial evidence. We review de novo a district court's order affirming the Commissioner's denial of benefits. *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir.1999). Our review of the Commissioner's decision to deny benefits is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *Id.; see* 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan*, 169 F.3d at 599. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

Claims of disability are evaluated under a five-step sequential procedure. *See* 20 C.F.R. § 404.1520(a)-(f). At issue in this appeal is whether the Commissioner has sustained his burden of showing, at Step Five, that, in light of Mr. Osenbrock's residual functional capacity, he can engage in other substantial gainful work that exists in the national economy. *See* 20 C.F.R. § 404.1520(f). There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir.1999). Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines. *See Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576–77 (9th Cir.1988). Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical

and mental abilities and vocational qualifications would satisfy. 20 C.F.R. § 404.1566(b); *see Burkhart v. Bowen,* 856 F.2d 1335, 1340 n. 3 (9th Cir.1988). Here, the ALJ relied on the testimony of a VE that Mr. Osenbrock can perform the duties of a timekeeper in concluding that the Commissioner met his burden of showing that Mr. Osenbrock was capable of performing substantial gainful work that exists in the national economy.

## IV

■ Mr. Osenbrock first asserts that the VE's testimony that Mr. Osenbrock was capable of performing the duties of a timekeeper was based on a misunderstanding of Mr. Osenbrock's past work experience. Mr. Osenbrock's testimony at the February 13, 1996, hearing was that, while employed as a manager at the mill, he supervised an average of four workers, distributed wood to the workers, and made sure they had work to do. He also testified that he recorded the quantity of wood used in the mill during the course of a day, which involved transferring information from the workers' individual logs into the main log, and the use of a time clock to track their work hours.

The VE testified that this experience qualified Mr. Osenbrock to work as a timekeeper. The fact that Mr. Osenbrock did not testify that he had worked as a timekeeper is not dispositive of the transferability of his existing skills to the position of timekeeper. Transferability of skills is defined in Social Security Ruling ("S.S.R.") 82–41 as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." S.S.R. 82–41 § 2(b). S.S.R. 82–41 further states that:

transferability ... is most probable and meaningful among jobs in which: (1) the same or a lesser degree of skill is required ... (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job); (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved. A complete similarity of all these factors is not necessary.

S.S.R. 82–41 § 4(a).

Here, the VE testified that transferring from the position of mill supervisor to that of timekeeper would be a move from skilled to semi-skilled work. The VE testified that the duties Mr. Osenbrock performed as a mill manager were similar to those required of a timekeeper. Substantial evidence supported the ALJ's finding that Mr. Osenbrock's prior work experience qualified him to perform the duties of a timekeeper.

## V

■ Mr. Osenbrock also maintains that the ALJ erred in failing to include each of his physical and mental impairments in the hypothetical question propounded to the VE. In his brief before this court, Mr. Osenbrock asserts that he:

suffers from degenerative disc disease of the lumbar spine with lumbar spine strain, tinnitus, with a moderate to severe, left worse than right, high frequency sensorineurall hearing loss, an organic brain disorder, depression, a substance addiction disorder (in partial remission), hepatitis, sleep apnea, diabetes, ulcers, adverse side-effects from medications, and is status-post shot-gun wound to the left shoulder with residual problems in the left shoulder, arm and hand.

Appellant's brief at 1.

■ No evidence was submitted to the ALJ that Mr. Osenbrock suffered from sleep apnea, diabetes, organic brain disorder, or hepatitis, nor did he demonstrate good cause for failing to do so. An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. *Roberts*

*v. Shalala,* 66 F.3d 179, 184 (9th Cir.1995). Because Mr. Osenbrock did not present any evidence that he suffers from sleep apnea, diabetes, organic brain disorder, or hepatitis in support of his disability claim, the ALJ did not err in failing to include these alleged impairments in the hypothetical question posed to the VE.[1]

## VI

■ Mr. Osenbrock also seeks reversal on the basis that the hypothetical questions posed by the ALJ "did not cover all of Mr. Osenbrock's limitations." The ALJ's first hypothetical question included Mr. Osenbrock's hearing impairment and the physical limitations associated with his degenerative disc disease. The VE responded that with the limitations on the length of time he can remain seated, Mr. Osenbrock could not do entry level assembly work, but could work as a timekeeper. The ALJ then inquired:

> [I]f the use of medications and drinking, poor physical conditioning would not permit either adherence to a regular work schedule, or at least a reliable work schedule, he became short of breath even walking short distances, whether or not it was secondary to medication or poor physical conditioning or smoking, regardless of what that might be, and even the full range of light work or maybe—with that kind of, that kind of impairment, that kind of impact, he couldn't do that?

The VE replied that a person suffering from the limitations set forth in the second hypothetical could not work as a timekeeper.

The ALJ did not err in relying exclusively on the VE's response ·to the first hypothetical question that did not include side effects from medication, alcoholism, and poor conditioning. There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work. When the ALJ asked Mr. Osenbrock to specify the most significant side effect from all the medications he took, Mr. Osenbrock stated "dozing off" and "dry mouth." He also stated that he tried not to drive after taking his medication because "I fall asleep when I'm driving." Mr. Osenbrock concedes in his brief to this court that his drinking "was not thought to be a significant problem by his treating physicians" at the time of the hearing, and also asserts that there was "overwhelming evidence that Mr. Osenbrock's addiction to alcohol had been in remission for at least two years." Additionally, the medical expert testified that Mr. Osenbrock was capable of alleviating his poor physical condition through daily exercise.

■ Nor was the ALJ bound to accept as true the restrictions set forth in the second hypothetical question if they were not supported by substantial evidence. An ALJ is free to accept or reject restrictions

---

1. This court has the authority to remand a disability benefits case to the Commissioner so that a claimant can place new medical evidence before the ALJ. *See Wainwright v. Secretary of HHS,* 939 F.2d 680, 682–83 (9th Cir.1991). Having examined the evidence submitted to the Appeals Council and the district court, we decline to do so. This medical evidence indicates that Mr. Osenbrock is being treated for Type II diabetes but also that his glycemic control is excellent and that he is doing very well, that he has been evaluated for sleep apnea but is sleeping nine hours per night, and that he has probable organic brain syndrome. *Cf. Wainwright,* 939 F.2d at 682 (stating that remand is only ap-

propriate where the claimant presents new evidence that is material to determining disability and good cause for the failure to produce it earlier and also that, to be material, the "'new or additional evidence offered must bear directly and substantially on the matter in dispute'") (quoting *Ward v. Schweiker,* 686 F.2d 762, 764 (9th Cir.1982)). Mr. Osenbrock is free to file a new application for benefits based on his sleep apnea, diabetes, and organic brain syndrome. *See Sanchez v. Secretary of HHS,* 812 F.2d 509, 512 (9th Cir.1987) ("If he can now prove a disabling physical or mental impairment, he will be entitled to benefits as of the date of the new application.").

in a hypothetical question that are not supported by substantial evidence. *See Magallanes v. Bowen,* 881 F.2d 747, 756–57 (9th Cir.1989). Thus the ALJ was free to accept Mr. Osenbrock's treating physician's February 1, 1996 diagnosis that the claimant's depression was mild and would not significantly interfere with the performance of work related activities, and that Mr. Osenbrock was "not drinking recently." The ALJ was not bound to accept Mr. Osenbrock's testimony as providing substantial, credible evidence that his use of medicine, his abuse of alcohol, and his physical condition would preclude him from performing light work.

The ALJ did not propound a hypothetical question that included depression, ulcers, hepatitis, or the residual effects of his gun-shot wound. An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations. *See Roberts v. Shalala,* 66 F.3d at 184. The hypothetical should be "accurate, detailed, and supported by the medical record," *Tackett,* 180 F.3d at 1101. It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record. *Magallanes,* 881 F.2d at 756–57.

The omission of depression from the hypothetical question is supported by substantial evidence in the record. The most recent medical evaluations by Mr. Osenbrock's treating physician diagnosed Mr. Osenbrock's depression as a mild impairment, which presented no significant interference with the ability to perform basic work-related activities. A treating physician's most recent medical reports are highly probative. *Cf. Stone v. Heckler,* 761 F.2d 530, 532 (9th Cir.1985) (in a case involving a claimant with a worsening condition, holding that medical evaluations prepared several months before hearing are not substantial evidence sufficient to rebut more recent conclusions by a treating doctor).

There is no evidence in the record that Mr. Osenbrock suffers from hepatitis. Indeed, one report stated that there was no evidence of "hepatic rupture." When asked about his stomach problems, Mr. Osenbrock stated that he had ulcers but that he was taking Prilosec and "surprisingly it works excellent" in controlling the pain he had experienced when "drinking cold or warm things."

The ALJ did not err in excluding the residual effects of Mr. Osenbrock's gun shot from the hypothetical question. The record shows that Mr. Osenbrock worked at his past employment as a mill manager for approximately six years *after* injuring his shoulder and left arm. Mr. Osenbrock testified that he is right-handed and denied having any problems gripping objects with his right hand. He also stated that he did not try to use his left hand for such things.

■ The ALJ rejected Mr. Osenbrock's testimony regarding the impact of his depression, his ingestion of medication, his abuse of alcohol, and the severity of his pain on his ability to work. An ALJ's reasons for discrediting a claimant's testimony concerning his symptoms must be clear and convincing. *See Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989). The ALJ must make specific findings justifying the rejection of excess symptom testimony. The ALJ's findings in this matter satisfied this burden. In this respect, the ALJ found as follows:

> In determining that the claimant can perform light level work activity, the undersigned has also considered the claimant's allegations of a degree of pain and limitation far in excess of the objective medical findings. The undersigned believes that he has clear and convincing reasons as required by the Law of the Ninth Circuit Court of Appeals and Social Security Ruling 95–5p, to reject the claimant's excess complaints.

First, neurological and orthopedic evaluations have revealed very little evidence

of any significant disabling abnormality of the claimant's upper or lower extremities or spine.

Second, the claimant has not been using a strong Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain. There is no evidence of significant side effects from the medications that he has been taking.

Third, the claimant has not participated in any significant pain regimen or therapy program.

Fourth, to the extent that the claimant's activities of daily living are limited, they are *self*-limited. This is pointed out by Dr. Schayes, the medical expert, who has indicated that the claimant's current restriction of activities of daily living are a lifestyle *choice*. The claimant does not possess the motivation to do more, which is reflected by his physical deconditioning. Dr. Schayes has in fact indicated that if the claimant were to commence a strategy to improve his circumstances by stopping smoking, quitting his alcohol consumption and getting on a program of reconditioning, then the claimant would be capable of performing almost medium level work activity on a sustained basis.

Fifth, there is no evidence of disuse muscle atrophy, no evidence of a severe weight loss because of loss of appetite from pain, and no evidence of severe sleep deprivation because of pain. Also, there is no evidence of attention, concentration, or cognitive deficits from pain.

Sixth, despite the claimant's allegations of severe pain and limitation, he was released by his treating physician, for return to light duty work effective July 6, 1994 (Exhibit 42, p. 3).

Seventh, the undersigned notes that physical examination revealed positive on the Waddell's criteria, which suggest a functional component to the claimant's pain. This is emphasized by another evaluator who noted significant subjective components to the claimant's lower extremity pain. That evaluator also indicated that there were inconsistent physical findings which suggested that the claimant was highly unreliable.

Consequently, the claimant's allegations of disabling pain excess pain and limitation, when considered pursuant to the Law of the Ninth Circuit Court of Appeals and Social Security Ruling 95–5p, are not credible. Thus, neither the objective medical evidence of record nor his subjective complaints warrant a preclusion from at least light work.

The claimant has also premised disability due to his mental and emotional condition. The treating and examining sources reflect that the claimant has a history of alcohol abuse. The claimant has testified and the record confirms that he has undergone three alcohol treatment programs. The claimant underwent the last treatment program one year prior to the hearing. He has continued to drink alcohol. As noted above, he has poor insight into the relationship between his alcohol consumption and its effects as well as his weight problems, physical condition and depressed mood. He has been under treatment by mental health professionals for his depressive condition. He is currently seeing Ann Lee of the Everett Clinic, a psychologist, on a frequency of once every two weeks. He has been prescribed antidepressant medication, which apparently help alleviate some of the depressive symptoms, which are mainly secondary to his alcohol abuse.

In evaluating the severity of the claimant's alcohol and related depressive disorder, the undersigned notes that the claimant has been able to abstain from alcohol for a period of two years, which is documented in the record. While he shows no current motivation to quit alcohol on any consistent basis, the undersigned finds that the claimant has the ability to voluntarily control his consumption of alcohol. Furthermore, as he has been able to demonstrate his

ability to continue working despite drinking alcohol, I find that such consumption would not preclude him from obtaining and maintaining employment. Taking into consideration the claimant's testimony at the hearing as well as the evidence of record, particularly the consulting report from Steven Jewitt, M.D., based upon his exam conducted on June 8, 1994 (Exhibit 43), I find that the claimant's combined mental impairments no more than slightly impair his activities of daily living as well as his ability to maintain social functioning. The evidence shows the claimant has deficiencies of concentration, persistence or pace often resulting in failure to complete tasks in a timely manner but no episodes of deterioration or decompensation in work or work-like setting ever occurring. I find no significant nonexertional limits due to the claimant's alcohol abuse and related depressive mood disorder.

The record shows that Mr. Osenbrock's physical deconditioning that renders him obese can readily be remedied by daily physical exercise and a change in his consumption of food that has resulted in a weight gain of five pounds a week. The ALJ's finding that Mr. Osenbrock's excess symptoms can be alleviated if he changes his sedentary life style is supported by substantial medical evidence.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

I respectfully dissent.

Scott Osenbrock suffers from back problems, hearing problems, residual effects of a gunshot wound, an ulcer, depression and alcoholism in partial remission. Nonetheless, the majority relies upon a determination by a vocational expert with an incomplete set of medical facts, and finds Osenbrock capable of gainful employ-ment. In doing so, the majority misreads the law and disregards substantial evidence in the record. While I agree that Osenbrock may have had the necessary job skills to be a timekeeper, he was not medically fit for the work.

As the majority recognizes, the Commissioner can prevail only if he can show that Osenbrock could engage in substantial gainful work existing in the national economy. 20 C.F.R. § 404.1520(f)(2000); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). Where, as here, the claimant suffers from non-exertional limitations, the Commissioner can only satisfy this burden by relying on the testimony of a vocational expert. *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000). The majority's opinion undermines this rule.

When the ALJ relies on the testimony of a vocational expert, the judge must propound a hypothetical that incorporates all of the medical and vocational limitations of the claimant set forth in the record. *Tackett*, 180 F.3d at 1101. If a hypothetical fails to reflect each of the claimant's limitations supported by "substantial evidence," the expert's answer has no evidentiary value. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984); *See also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir.1988). The hypothetical propounded by the ALJ included Osenbrock's back and hearing problems, but omitted mention of Osenbrock's medication side effects, depression, poor physical condition, ulcer, alcoholism and residual effects of a gunshot wound, all of which are amply supported by the record.[1] Determining which limitations affect the claimant's ability to work is the job of the vocational expert, not the ALJ. By permitting the ALJ to limit the hypothetical solely to those ailments he considers worthy, the majority vastly enlarges

---

1. The hypothetical also omitted mention of severe emotional disturbance attributed to organic brain disorder, as well as sleep apnea, diabetes and hepatitis. Because Osenbrock did not present these claims to the court below, and because he did not show good cause for the omission, we agree with the majority's determination that we should not consider them here.

the power of the ALJ and violates clear law.

### A.

The majority defies both case law and common sense when it claims that Osenbrock's "physical deconditioning that renders him obese can readily be remedied by daily physical exercise and a change in his consumption of food...." An ALJ must consider obesity in determinations of disability. *Hammock v. Bowen*, 879 F.2d 498, 503–504 (9th Cir.1989) (en banc). We do not require disability claimants to lose weight since it "is a task which is not equivalent to taking pills or following a prescription." *Id.* Despite our clear law on the subject, the majority simply assumes that Mr. Osenbrock could overcome his weight problem, even while plagued by back pain, depression, and possible alcoholism. In fact, even if Osenbrock could ameliorate his physical condition, he would need to receive disability benefits until that time.

### B.

The majority also justifies exclusion of Osenbrock's limitations by characterizing them as insignificant, claiming that Osenbrock's medication side effects were not severe, that his depression was mild, that his gunshot wound still allowed him to use his right hand, that his ulcer medication was working well, and that his alcoholism was in remission. The ALJ does not have free reign to disregard physical limitations simply because they are either well-managed or mild.[2] In fact, the hypothetical propounded by the ALJ should be "accurate" and "detailed." *Tackett*, 180 F.3d at 1101. It is the vocational expert who then determines whether the mild impairment would affect the claimant's ability to work. *See, e.g., Sample v. Schweiker*, 694 F.2d 639 (1982) (vocational expert considered hypothetical in which claimant's back pain, alcoholism and mental disorders were controlled by medication).

Moreover, a claimant's conditions must be considered in combination when determining a disability. 42 U.S.C. § 423(d)(2)(B). Even a limitation which on its own would not constitute a disability can rise to that level when considered in the context of a claimant's other problems. *Id.* Osenbrock's situation highlights the necessity of this rule. Perhaps, alone, moderate depression, a managed ulcer, the inability to use a left hand, or alcoholism in partial remission would not rise to the level of disability. Indeed, as the majority noted, Osenbrock's gunshot injury did not hamper his work when his back was not injured. When considered in combination, however, and added to Osenbrock's back injury and hearing loss, these problems would significantly impair Osenbrock's ability to work.

The vocational expert's testimony underscores the impropriety of the majority's approach. In response to a hypothetical including side effects from medication, alcoholism and general poor conditioning, the vocational expert stated that Osenbrock probably would *not* have been able to perform the duties of a timekeeper. This decision should have been left to the vocational expert, not arrogated by the ALJ.

### C.

In characterizing the excluded limitations as insignificant, the majority also ig-

---

2. The majority has it all wrong on the issue of hypothetical questions. In this case, the ALJ asked a hypothetical question. The vocational expert stated that a person who suffered from the limitations set forth in the hypothetical could not work as a timekeeper. The majority holds that the ALJ had a right to reject the evidence because the hypothetical was not supported by substantial evidence. It cites *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir.1989), for the rule. The flaw is that in *Magallanes,* the hypothetical question was asked by claimant's counsel. Certainly, *Magallanes* is correct. But here, the hypothetical was asked by the judge. It was the judge who inserted the facts in the question and then disregarded it. The difference is monumental.

nores key evidence in the record. First, the majority ignores the implications of Osenbrock's medication side effects. Because the side effects of medication can significantly impact on an individual's ability to work, we consider them in disability determinations. *Varney v. Secretary of Health & Human Services,* 846 F.2d 581, 585 (9th Cir.1988). "Side effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized." *Id.* (citations omitted). The majority briefly acknowledges that as a result of his medication, Osenbrock became so tired that he could not drive for fear of falling asleep at the wheel. Such severe fatigue could certainly interfere with Osenbrock's ability to work. Nonetheless, the majority finds it inconsequential that the ALJ excluded this information from the relevant hypothetical.

Similarly, the majority affirms the ALJ's omission of depression from the hypothetical. An ALJ may not simply discount evidence of depression in a disability determination. *Gutierrez v. Apfel,* 199 F.3d 1048, 1051 (9th Cir.2000). The majority justifies its conclusion that Osenbrock's depression was not severe by noting that the treating physician, Dr. Ihle, categorized it as "mild." Dr. Ihle's records, however, are not so clear. Dr. Ihle rated Osenbrock's medical problems on a scale of 1 to 5. On this scale, 2 was supposed to represent a mild impairment which would not interfere with Osenbrock's work. Dr. Ihle marked "2" for both hearing loss and depression. Next to hearing loss, however, he also wrote "moderate to severe." It seems likely, then, that Dr. Ihle had not attached the proper numeric value to the impairments.

In light of this confusion, the majority should have looked to the rest of the record, which reveals that Osenbrock suffered from severe depression. Osenbrock testi-fied that he was quite depressed, that he worried that his wife was close to leaving him, that he had trouble controlling his anger, that he was anxious and had thoughts of suicide and that he did not like to be around people. Additionally, his medical records demonstrate a history of severe depression. Even if mild limitations were correctly excluded, the record demonstrates that Osenbrock's medication side effects and his depression were severe.[3]

Because the ALJ's hypothetical failed to include all of the relevant medical evidence, I respectfully dissent.

---

3. Since Osenbrock conceded that his alcoholism was in remission, the majority did not err in assuming that to be true. It is worth noting, however, that the ALJ appears to have acknowledged Osenbrock's persistent alcohol problem. The terms of Osenbrock's remission are especially questionable since a letter from one of his physicians suggests that he had a history of hiding his drinking.