

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2005

# Simmons v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4232

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Simmons v. Comm Social Security" (2005). *2005 Decisions.* Paper 536.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/536

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-4232

BILLIE SIMMONS

v.

JO ANNE BARNHART, Commissioner,
Social Security Administration


Billie E. Simmons,

Appellant


On Appeal from the United States District Court
for the District of Delaware
District Court No.: 02-CV-01539
District Judge: The Honorable Kent Jordan


Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2005

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: September 16, 2005)


OPINION OF THE COURT


SMITH, *Circuit Judge*.

Billie Simmons applied in March 1992 for disability benefits under Title II and

supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. An Administrative Law Judge ("ALJ") denied Simmons's application, but her request for review by the Appeals Council was granted because the transcript of her first hearing was lost. After a second hearing before the same ALJ, Simmons's application for benefits was denied again on May 3, 1999. When the Appeals Council denied her second request for review, Simmons filed an appeal with the United States District Court for the District of Delaware. It granted the Commissioner's motion for summary judgment, thereby affirming the denial of Simmons's application for benefits. This timely appeal followed.[1]

Judicial review of the denial of an application for Social Security benefits is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

Simmons worked for seventeen years as a psychiatric assistant in a state mental hospital until she was assaulted in 1988. She received worker's compensation benefits for a period of time, and obtained other employment in 1989 as a clerk in a flower shop. This position was not as physically demanding as her work at the mental hospital and it

---

[1]The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). We exercise jurisdiction under 28 U.S.C. § 1291.

afforded her the flexibility she needed in light of her husband's declining health. According to Simmons's testimony, the work she performed in the flower shop was light in nature.

At times, Simmons worked part-time because of either her husband's health or the deterioration of her left hip. Eventually, on October 14, 1991, Simmons had a total left hip replacement. On March 2, 1992, Dr. Gelman, Simmons's orthopedic surgeon, documented that all of her preoperative pain had subsided, and he released her to return to work in April with a twenty-pound weight restriction. Shortly after her appointment with Dr. Gelman at the beginning of March, Simmons applied for disability and SSI benefits, alleging disability as a result of her hip surgery.

In a follow-up visit in July 1992, Dr. Gelman documented that Simmons was "doing very well and has regained a very physical and functional lifestyle." At some point, Simmons returned to work at the flower shop part-time, working until late 1993 or early 1994. In response to an inquiry from the Disability Determination Services, Dr. Gelman opined that when he last evaluated Simmons in July 1992 she "was doing quite well" and that "[b]ased on my most recent examination in July of 1992, I did not feel that Billy Simmons was disabled."

After Simmons's hip surgery, she experienced problems with her voice. Although she was evaluated by multiple physicians, no abnormalities were detected. She also complained of hip, leg, lower back, and chest pain, as well as carpal tunnel type

problems. A cardiac catheterization ruled out a cardiac etiology for the chest pain. Pulmonary function tests and a chest x-ray were normal. Diagnostic studies of her spine revealed some degenerative changes, but were generally "unremarkable" except for a mild bulging lumbar disc. Simmons "responded well" to treatment of her low back pain with epidural blocks. In a progress note dated January 1998, Dr. Townsend, Simmons's treating neurologist, documented that she had a full range of motion, a normal gait, and neither sensory nor muscular deficits. Dr. Townsend acknowledged that Simmons had headaches, but opined that "[s]he does well" with medication.

In August 1995, Simmons was referred to Dr. Ivins, a psychologist. His consultative report indicated that Simmons reported that she sustained a head injury as a child, that she was unsteady on her feet throughout her life, had done poorly in school and was "never able to keep a job for very long." Dr. Ivins also documented that there was concern as to whether Simmons's voice problems were secondary to a mini-stroke from anesthesia during her hip surgery. After administering several diagnostic tests, Dr. Ivins documented that Simmons functioned in the average range of general intelligence, that she had some memory impairment, that she had no sensory deficits and that her motor strength was impaired in the right hand to a degree, but was otherwise within normal limits. Dr. Ivins opined that Simmons had severe emotional difficulties secondary to her head injury and her hip surgery, and that she "is not presently able to perform any suitable gainful employment. Ms. Simmons is disabled."

4

As noted above, the transcript of the first hearing was lost. At the second hearing before the same ALJ, Simmons testified that she was completely disabled. She affirmed that she was in constant pain, dropped things because of her carpal tunnel type problems, had memory problems, experienced headaches confining her to bed two to three days a week, was limited to standing for thirty minutes and sitting for two hours, and was unable to lift anything heavy. The ALJ asked Simmons, based on the ALJ's notes from the earlier hearing, about certain aspects of Simmons's previous testimony which indicated that she was quite active and subject to minimal restrictions. Simmons confirmed that her previous testimony concerning her physical activities had been accurate, but affirmed that her physical abilities as of the date of this later hearing were more limited.

The ALJ concluded that although Simmons's degenerative joint disease of her hip and lower back were severe impairments, these conditions did not satisfy the criteria of certain impairments in Appendix 1 of the regulations. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ discounted Dr. Ivins's opinion that Simmons was disabled. He explained that Dr. Ivins's opinion that Simmons's head injury as a child had caused multiple limitations was contradicted by the fact that Simmons had been able to work for seventeen years as a psychiatric assistant. The ALJ rejected Dr. Ivins's opinion that Simmons was disabled because it was internally inconsistent with his assessment that Simmons's intellectual functioning was normal and the fact that the results of many of the tests were within normal limits. The ALJ partially credited Simmons's testimony,

5

finding her capable of light work with occasional postural maneuvers. Because these restrictions were compatible with her past relevant work as a flower shop clerk, the ALJ concluded she was not disabled.

On appeal, Simmons argues that the ALJ erred because she considered non-record evidence, namely the ALJ's own notes of Simmons's testimony from the first hearing. She contends that the consideration of non-record evidence deprives a claimant of the opportunity to cross-examine witnesses or to present rebuttal evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988). We do not take issue with this general proposition. Unlike *Burkhart*, however, the record in this case contains testimonial evidence from Simmons herself confirming that this non-record evidence was accurate at the time it was made. For that reason, it was not improper for the ALJ to observe the disparity between Simmons's testimony regarding her physical activities at the time of the first hearing and her physical abilities at the latter date. *See* 20 C.F.R. § 404.929 (establishing that an ALJ must render "a decision based on the hearing record").

Simmons also contends that the ALJ erred by discounting Dr. Ivins's opinion that she was disabled, and by finding Simmons only partially credible. We find no error by the ALJ inasmuch as she explained that Dr. Ivins's opinion was contradicted by both medical evidence and Simmons's own testimony about her capabilities over the years. *Plummer*, 186 F.3d at 429 (reiterating that a physician's opinion may be rejected or discounted on the basis of contradictory medical evidence); *Newhouse v. Heckler*, 753

F.2d 283, 286 (3d Cir. 1985). Nor do we find any error in the weight the ALJ accorded Simmons's testimony. Simmons's testimony was appropriately discounted because it was contradicted by both the medical evidence and Simmons's reports of her limitations over the years. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (observing that the weight accorded subjective complaints may vary depending on the extent to which they are supported by medical evidence). By finding that Simmons was restricted to light work, the ALJ accorded great weight to portions of Simmons's testimony and accounted for the limitations imposed by her orthopedic problems. Because those restrictions were compatible with her past relevant work as flower shop clerk, there is substantial evidence to support the ALJ's conclusion that Simmons was not disabled under the Social Security Act.

Simmons asserts, however, that the ALJ's decision is not supported by substantial evidence because the ALJ failed to develop the details of her past relevant work as a flower shop clerk, and to take into account both her mental limitations and her need to avoid humid conditions. This contention is without merit. At the second hearing, Simmons described the exertional demands of her work as a flower shop clerk as light. As the District Judge explained, humidity was never cited by any of her treating physicians as a restriction and there was no medical evidence, beyond the opinion of a non-examining physician, to support such a restriction. Indeed, her pulmonary function tests and chest x-ray were normal. The ALJ explained that Simmons's alleged mental

7

limitations did not preclude employment in light of Simmons's activity level as set forth in her disability report and her testimony. In fact, Simmons testified that she had memory problems in 1992. Yet the record shows that she was able to return to work in the flower shop and to continue her employment for a period of time.

In sum, we conclude that there is substantial evidence in the record to support the ALJ's determination that Simmons is not disabled. We will affirm the judgment of the District Court.