Guillermo **MIRANDA–MONSERRATE,** Plaintiff

v.

Jo Anne B. **BARNHART,** **Commissioner of Social Security, Defendant.**

**Civil No. 06–1803 (DRD).**

United States District Court, D. Puerto Rico.

Oct. 23, 2007.

Raymond Rivera–Esteves, Juan Hernandez Rivera & Association, San Juan, PR, for Plaintiff.

Ginette L. Milanes, United States Attorney's Office, San Juan, PR, for Defendant.

## AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

### I. Procedural History

Pending before the Court is an appeal of a denial of disability benefits under the Social Security Act. Plaintiff is a claimant who filed an application for disability insurance benefits on June 13, 1997, alleging that he was disabled and had been so since October 31, 1995 due to nerves as well as back, arm, shoulder, hand, hip and leg pain. Plaintiff was forty-four (44) years old in March, 1999. He completed school through the sixth grade and has past relevant work as a carpenter's helper.

The Plaintiff's initial application for Social Security disability benefits was denied and the Administrative Law Judge (ALJ) held a hearing on March 5, 1999. At this hearing, the ALJ determined that Plaintiff's capacity for light work had not been compromised by his non-exertional limitations and that he was therefore not disabled. The Appeals Council later denied Plaintiff's request for review.

On August 18, 2006, Plaintiff filed a *Complaint* (Docket No. 1), appealing the denial of Social Security benefits under 42 U.S.C. § 405(g). Plaintiff alleges that he was wrongfully denied Social Security benefits as he is, in fact, disabled under the meaning of the Social Security Act and that he exhausted all administrative remedies prior to filing this appeal.

Defendant filed her *Answer to the Complaint* (Docket No. 5) on October 13, 2006. Defendant requests that the court dismiss the complaint, with costs, because the denial of Social Security benefits was in accordance with the Social Security Act. Defendant asserts that the Commissioner of Social Security's findings of facts are supported by substantial evidence, thereby making the denial proper.

On October 30, 2006, Defendant filed a *Memorandum of Law* (Docket No. 6), claiming that the ALJ correctly used the Medical Vocational Guideline (the "Grid") as a framework for determining that Plaintiff was not disabled, despite his mental

and physical limitations. Defendant asserts that, because the ALJ may make credibility decisions where his decision is supported by substantial evidence, the ALJ here correctly read the medical reports as determining that the Plaintiff was capable of performing light, unskilled work as long as it did not involve complex instructions. The Defendant avers that therefore the ALJ's determination of residual functional capacity was within his discretion because Plaintiff's capacity was not significantly compromised by his non-exertional limitations.

Plaintiff filed his *Memorandum of Law* (Docket No. 7) on January 2, 2007, asserting that he made a prima facie case of disability, thereby shifting the burden to the ALJ to prove residual capacity. Although the Plaintiff does not deny that his physical impairments were insufficient under the Grid for a finding of disability, he does aver that the combination of his exertional and non-exertional limitations eroded his occupational base sufficiently to require the consultation of both a medical expert and vocational expert. Plaintiff asserts that the limitations recognized by Dr. Umpierre severely limit his occupational base [1], so a vocational expert should have been consulted before the ALJ determined that he was not disabled.

On April 9, 2007, the Court referred the case to Magistrate Judge Justo Arenas for a Report and Recommendation (Docket No. 10) and on April 23, 2007, Magistrate Judge Arenas submitted his *Report and Recommendation* (Docket No. 10) to the Court, affirming the ALJ's final decision. Magistrate Judge Arenas reviewed the ALJ's findings to discern whether there was substantial evidence supporting the ALJ's decision to deny disability status. Although the Magistrate Judge indicated that he might not agree with the final decision, he did not find that the Commissioner's decision failed to comply with the requirements of the substantial evidence rule and therefore found no good cause to remand.

Finally, on May 1, 2007, Plaintiff filed a *Motion in Opposition to Magistrate's Report and Recommendation* (Docket No. 11). Here, Plaintiff contends that the limitations noted in the Mental Residual Functional Capacity Assessment establish that the claimant has non-exertional limitations which affect his ability to perform the unskilled work which the Grid otherwise prescribed. Therefore, Plaintiff believes that he was entitled to the opinion of a vocational expert regarding which jobs he retains the ability to perform before the ALJ made his final decision regarding disability status.

The Court recognizes the excellent Report and Recommendation of the Magistrate Judge, however, the District Court "prefers [in this case because of the mental/physical condition of the Plaintiff] to err on the side of taking vocational expert testimony" as was recommended in *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 528. Consequently the Court hereby **REMANDS** the case to the Commissioner for the reasons stated below. The Court explains.

## II. Applicable Law

### A. Referring Dispositive Motions to a U.S. Magistrate Judges

The District Court may refer dispositive motions to a United States Magistrate

---

1. The basic mental demands of competitive remunerative unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. *Ortiz v. Sec. of Health and Human Svcs.*, 890 F.2d 520, 526 (1st Cir.1989).

Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); L.Civ.R. 72(b); See *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections within ten (10) days after being served a copy thereof. FED. R.CIV.P. 72(b); L.Civ.R. 72(d). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations make by the magistrate.

28 U.S.C. § 636(b)(1).

Any objections to the Magistrate Judge's order must be filed with the Clerk of Court within ten (10) days after being served with a copy [thereof]. 28 U.S.C. § 636(b)(1) (2005); L.Civ.R. 72(c).

■ Any written objections must specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections. L.Civ.R. 72(c). Failure to file objections within the specified time waives the right to appeal the District Court's order. *U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986). Additionally, claims which are not preserved by such objections are precluded upon appeal. *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). Thus, timely objections are required in order to challenge the findings of a magistrate's recommendation, as well as the magistrate's failure to make addi-

tional findings. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir. 1994). Additionally, only objections to the magistrate's recommendation which are specified are preserved. *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993). Therefore, the objecting party is only entitled to a de novo review of the issues which are specifically raised by the objection. *See, e.g. U.S. v. Valencia,* 792 F.2d 4, 6 (1st Cir.1986); *See also Gioiosa v. U.S.,* 684 F.2d 176, 178 (1st Cir.1982).

## B. Social Security Claim

■ Under the Social Security Act, the factual findings of the presiding Administrative Law Judge (ALJ) are conclusive where they are supported by "substantial evidence." 42 U.S.C. § 405(g). This Court will uphold the ALJ's findings where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec. of Health and Human Svcs.,* 647 F.2d 218, 222 (1st Cir. 1981).

■ A claimant of disability benefits under the Social Security Act bears the initial burden of proving his disability. *Reyes Robles v. Finch,* 409 F.2d 84 (1st Cir.1969). To meet this burden, the claimant must establish that he is incapable of engaging in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). Furthermore, a person is to be considered disabled only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. 423(d)(2)(A).

■ A plaintiff presents a prima facie case where he shows that, by reason of his disability, he is incapable of returning to any former occupation. *Hernandez v. Weinberger,* 493 F.2d 1120, 1122 (1st Cir. 1974). Once the plaintiff makes this initial showing, the burden shifts to the government, which must offer "evidence showing there is generally available employment of the kind for which [plaintiff] is fit and qualified." *Torres v. Celebrezze,* 349 F.2d 342 (1st Cir.1965). The government "is not obligated to demonstrate that the claimant would actually be hired but [the government] must show that there are specific jobs in the national economy which the claimant is capable of doing." *Hernandez,* 493 F.2d at 1122.

Procedurally, the evaluation of a disability claim is handled in a five-step sequential evaluation process, outlined in 20 C.F.R. § 404.1520. First, the claimant's current work activity is considered; if the claimant is engaged in any substantial gainful activity, he is not considered disabled for the Social Security purposes. 20 C.F.R. § 404.1520(a)(4)(i). At steps two and three, the severity of impairment is considered and, if the impairment is not severe enough or its duration is insufficient, claimant is not considered disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The fourth step is that at which the residual capacity for performance of past work is considered. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform a type of work which he performed in the past, he is not disabled for Social Security purposes. 20 C.F.R. § 404.1520(a)(4)(iv). The final step is that at which the claimant's residual functional capacity, age, education and work experience is considered and a decision regarding the ability of claimant to adjust to other work is made. 20 C.F.R. § 404.1520(a)(4)(v).

■ Although the occupational "Grid" may be used by the Administrative Law Judge to make determinations regarding the disability status of many individuals under 20 C.F.R. § 404.1520(a)(4), "[w]here a claimant has non-exertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform." *Heggarty v. Sullivan,* 947 F.2d 990, 996 (1st Cir.1991).[2]

Nonexertional impairments are treated differently under the regulatory scheme. As noted above, under the final test in the five-stage sequential analysis, once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Secretary has the burden of proving the existence of other jobs in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(f) (1988). The Grid is designed to enable the Secretary to satisfy this burden in a "streamlined" fashion without resorting to "the live testimony of vocational experts." *Sherwin,* 685 F.2d at 4. Yet the Grid is "predicated on

2. The Court notes that the First Circuit Court's most recent decisions (not selected for publication) lean heavily towards the use of a vocational expert in all but the most clear-cut cases. *See Roman–Roman v. Commissioner of Social Security,* 114 Fed.Appx. 410, 2004 WL 2634489(finding that the ALJ's reliance on the Grid was precluded and that a vocational expert or further medical evidence was required to determine whether the claimant in fact had sufficient occupational options to find him not disabled); *see also Candelaria v. Commissioner of Social Security,* 195 Fed. Appx. 2 (1st Cir.2006) (vacating and remanding to the district court where the ALJ failed to denote findings particularized to claimant's ability to perform the range of occupations prescribed by the Grid despite an additional impairment in her inability to reach).

an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs...." 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e) (1988) (emphasis added). Accordingly, where a claimant has one or more non-strength limitations, "the Guidelines do not accurately reflect what jobs would or would not be available." *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662, 665 n. 6 (1st Cir.1981). In cases where a nonexertional impairment "significantly affects claimant's ability to perform the full range of jobs" he is otherwise exertionally capable of performing, *Lugo,* 794 F.2d at 17, "the Secretary must carry his burden of proving the availability of jobs in the national economy by other means," *Gagnon,* 666 F.2d at 665 n. 6, typically through the use of a vocational expert. See, e.g., *Burkhart v. Bowen,* 856 F.2d 1335, 1340–41 (9th Cir.1988); *Burgos Lopez,* 747 F.2d at 42; *Sherwin,* 685 F.2d at 3. On the other hand, should a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate. See, e.g., *Caldarulo v. Bowen,* 857 F.2d 410, 413 (7th Cir.1988); *Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3–4 (1st Cir.1987) (per curiam), cert. denied, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988); *Borrero Lebron v. Secretary of Health and Human Services,* 747 F.2d 818, 818–20 (1st Cir.1984) (per curiam).

Moreover, even where a nonexertional impairment is significant, the Grid may still be used as "a framework for consideration of how much the individual's work capability is further diminished...." 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2) (1988). Whether,

by so invoking the Grid as a "framework," the Secretary can satisfy his burden under step five without resorting to vocational evidence depends on how closely the claimant's characteristics and the Grid criteria overlap. As mentioned above, the Grid is meant to reflect the potential occupational base remaining to a claimant in light of his strength limitations. If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. Yet the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence. See, e.g., *Sherwin,* 685 F.2d at 3; Social Security Ruling ("SSR"), 85–15, at 93 (CE 1985); SSR 83–14, at 205, 207 (CE 1983).

. . .

The Grid of course includes skill level as one of its criteria, looking at the level of skill involved in a claimant's "previous work experience" in order to gauge future work capacity. See 20 C.F.R. § 404.1565(a) (1988) (the kind of work an individual has "already been able to do shows the kind of work that [he] may be expected to do"). A finding that a mental impairment relegates a claimant to unskilled work provides another, equally valid means of making that prediction. Moreover, the Grid rules are directly premised on the availability of jobs at the unskilled level: the "table rules reflect the potential occupational base of unskilled jobs for individuals who have severe impairments which limit their exertional capacities...." SSR 85–15, at 92 (emphasis added). In fact, the regulations take explicit administra-

tive notice of the existence of "[a]pproximately 1600 separate sedentary and light unskilled occupations ... in eight broad occupational categories, each occupation representing numerous jobs in the national economy." 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00(a) (1988) (emphasis added). Consequently, so long as a nonexertional impairment is justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance and the need for vocational testimony is obviated.

In the case of mental impairments, this inquiry actually entails two separate determinations: (1) whether a claimant can perform close to the full range of unskilled work, and (2) whether he can conform to the demands of a work setting, regardless of the skill level involved. As to the former, the Secretary has outlined the mental capabilities required for unskilled work as follows:

The basic mental demands of competitive remunerative unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

*See Ortiz*, 890 F.2d at 524–526.

## III. Analysis

The issues pending before the Court are (1) whether the evidence in the record supports the ALJ's conclusion that since Plaintiff's non-exertional limitations do not significantly compromise his capacity for the full range of light work, Plaintiff is therefore not found to be disabled, and (2) whether Plaintiff's case required the use of a vocational expert in order to determine which jobs Plaintiff retains the ability to perform before the ALJ made his final decision regarding his disability status. After carefully reviewing the record the Court has found the following.

In the *Report and Recommendation* (Docket No.10), Magistrate Judge Arenas concluded that, even though he disagreed with the ALJ's final decision, after considering the evidence as a whole, the Commissioner's decision complied with the requirements of the substantial evidence rule. There being no good cause to remand, the Magistrate Judge recommended that the Commissioner's final decision be affirmed and that the instant action be dismissed.

The Plaintiff, however, objected to the Magistrate Judge's conclusion, claiming that his non-exertional limitations severely eroded his ability for unskilled work and that he deserved the opinion of a vocational expert before the denial of his Social Security claim.

Since there is no dispute regarding the fact that Plaintiff is unable to perform his past relevant work as a carpenter, the issue in this case centers around whether or not Plaintiff's residual functional capacity for full range of light work has been compromised by his non-exertional libations, which the ALJ has concluded that it does not. For said reason, the Court shall only review the non-exertional medical evidence in the record in order to determine if the ALJ's aforementioned conclusion is supported by the record and whether or not the use of a vocational expert was warranted in this case.

On March 25, 1998, Disability Determination Services referred Plaintiff to Dr. Madeline Santos Carlo, for an evaluation of his mental condition. At that time, Plaintiff informed the doctor that he was

suffering from anxiety, depression, insomnia, loss of memory and decreased appetite. Furthermore, he indicated that he developed the aforementioned emotional symptoms in 1995 due to an accident that he suffered at work. He stated that he has followed psychiatric treatment with Dr. Febles, in Manati since 1997, but that he has not been consistent with the appointments because of financial problems. He indicated that at the present time he was not under any medications. Plaintiff had no history of psychiatric hospitalization nor a history of suicidal ideas or attempts. Plaintiff also reported the following medical conditions: herniated disc at lumbar level for which he was getting treatment with Dr. Figueroa, GP, a deviation of the vertebral column, headaches, asthma, and that he had undergone surgery for an inguinal hernia approximately 15 years ago.

Upon examination, Dr. Madeline Santos Carlo determined the following (*See* Social Security Transcript pgs. 299–305):(1) Plaintiff showed a good personal hygiene, (2) maintained a cooperative attitude throughout the whole course of the interview, (3) his visual contact was adequate, (4) he presents increased psychomotor activity, (5) his level of anxiety is increased, (6) his affect was adequate to the discussion topic, (7) his production appeared normal, (8) he did not present speech related defects, (9) the thought flow was spontaneous, logical, coherent and relevant, (10) there was no evidence of perception disorders, delirious or paranoid ideation,(11)ideas of reference, suicidal or homicidal thoughts, blockings or phobia; (12) his self esteem was poor; (13) he was oriented in person, place and time but his concentration was poor, and (14) his recent and remote memory were both diminished. In regards to Plaintiff's intellectual capacity Dr. Madeline Santos Carlo stated that Plaintiff offered the appropriate answers to the questions that measured his general knowledge, that his capacity for abstraction was poor, he offered poor answers to the test on similar words, that he committed multiple errors in the simple mathematics exercises of the test but that he offered appropriate answers to the questions that measure common sense. After evaluating his intelligence with the "Kent–Egy–Test" he obtained 11 points out of 41. His ability to associate and his judgment and introspection were adequate. Dr. Madeline Santos Carlo's diagnostic impression was that he had a depressive disorder N.O.S., a herniated disc at lumbar region, asthma and a present functioning of 50–60. She also stated that he was competent to administer his money. **Regarding his functional capacity, Dr. Santos Carlo's stated that although he did not present physical limitations, his emotional disorder interfered with his entire ability to function.**[3] Finally, Dr. Santos Carlo gave Plaintiff a poor prognosis and stated that he required psychiatric treatment.

A non-examining physician, Dr. Luis Umpierre, also completed a Psychiatric Review Technique form for Plaintiff on May 15, 1998 (*See* Social Security Transcript pgs. 195–203). In this evaluation, Dr. Umpierre found that Plaintiff had moderate limitations in various areas, including restriction of activities of daily living, difficulties in maintaining social functioning and deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere). Further-

---

**3.** The ALJ relied heavily on the opinion of this expert witness, however he failed to detect the conclusion of the Social Security expert that Plaintiff's "emotional disorder interferes with his entire ability to function." (*See* Social Security Transcript pgs. 299–305; *see also* ALJ's decision, Social Security Transcript pgs. 45–51).

more, Dr. Umpierre found Plaintiff having an affective disorder with depression, affected memory and concentration. Dr. Luis Umpierre also completed a Mental Residual Functional Capacity Assessment as to Plaintiff and found that he suffered from moderate limitations in following areas (*See* Social Security Transcript pgs. 216–219):(1) remembering locations and work-like procedures, (2) understanding and remembering detailed instructions, (3) carrying out detailed instructions, (4) maintaining attention and concentration for extended periods, (5) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance, (6) working in coordination with or proximity to others without being distracted by them, (7) completing a normal work day and work week without interruptions from psychological based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, (8)interacting appropriately with the general public, (9) accepting instructions and responding appropriately to criticism from supervisors, (10) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, (11) responding appropriately to changes in the work setting, and (12) traveling in unfamiliar places or use public transportation. In the same report Dr. Luis Umpierre found Plaintiff as not being significantly limited in the following areas: (1)understanding and remembering very short and simple instructions, (2) carrying out very short and simple instructions, (3) sustaining an ordinary routine without special supervision, (4) making simple work-related decisions, (5)asking simple questions or requesting assistance, (6)maintaining socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, (7)being aware of normal hazards and taking appropriate precautions, and (8) setting realistic goals or making plans independently of others. On July 1998, Plaintiff attempted suicide and was admitted to First Hospital Panamericano on July 21, 1998 and discharged on July 29, 1998.[4]

In regards to the Plaintiff's non-exertional limitation the ALJ stated the following:

> The record indicates that on March 25, 1998 the claimant was examined by a consulting psychiatrist. The mental status report shows that the claimant represents his chronological age. He showed good personal hygiene. The psychomotor activity appeared accelerated. The affect was adequate. He was logic, coherent and relevant. He did not show perceptual distortions. The low self esteem is poor. He was oriented in all spheres. The claimant's memory appeared diminished. He was alert during the interview and his concentration was considered poor. Also his capacity for abstraction is poor. The judgment and insight are adequate. The claimant was diagnosed with depressive disorder not otherwise specified. The physician reported a poor prognosis(Exhibit 19).

> The record shows that almost a month after his date last insured expired the claimant was admitted to First Hospital Panamericano being the admission date July 21, 1998 and discharge date July 29, 1998. Upon admission the claimant was presenting depressive symptoms with suicide ideation with an apparently suicide attempt. There is no history in file of this suicide attempt. The claim-

---

4. Plaintiff was already beyond his last date of disability insurance under Social Security at the time of the attempted suicide, as the last date of insurance was June 30, 1998. Consequently, said incident cannot be considered in order to deny or grant disability insurance.

ant was informing that he began feeling irritable and unable to concentrate about a year ago. There is no evidence in file indicating that the claimant was seeking any psychiatric treatment as of July 1997 even of discharge on July 29, 1998 the claimant was stable in his condition. He was alert, oriented, cooperative and the mood was slightly depressed. The affect was appropriate. He denied any perceptual disorders and the judgment and insight were adequate and the memory was conserved. Upon discharge the global functioning assessment was 65% (Exhibit 22).

In relation to the claimant's emotional condition the same resembles an affective disorder and has been diagnosed as severe major depression with psychotic features. We first have a clear picture of the claimant's mental status beginning March 25, 1998 when he was examined by the consulting psychiatrist and by this time he was presenting a slight to moderate condition. Apparently the condition worsened in July 1998 and he needed 8 days of hospitalization to control the symptomatology. By the time of discharge the claimant was stable and he was recommended psychiatric treatment. In other words from the first date that we have a clear profile of the claimant's emotional status up to the date he was last insured for disability purposes, he did not show emotional impairment which lasted 12 consecutive months. We said before, that as of the date of discharge, July 29, 1998, he was no longer insured (the insured status expired on June 30, 1998). He was stable and the symptomatology for which he was hospitalized was controlled. Accordingly we can reasonably say that the claimant's emotional impairment during the time he was insured for disability purposes did not last 12 consecutive months and more important was not preventing the claimant from engaging in substantial gainful activity since the same was of slight to moderate nature.

. . .

Based on an exertional capacity for light work and the claimant's age, education, work experience, Section 404.1569 and Rule 202.18, Table No. 2, Appendix 2, Subpart P, of Regulations No. 4 would direct a conclusion of not disabled.

The claimant's capacity for the full range of light work has not been significantly compromised by his additional nonexertional limitations. Accordingly, using the above cited rule as a frame work for decision making, the claimant is not disabled. Based on the foregoing, the claimant is found to be not disabled at any time from the alleged onset date through June 30, 1998, the date the claimant was last insured for disability purposes (20 CFR 404.1520(f)).

As aforementioned, the issues in this case are (1) whether the evidence in the record supports the ALJ's conclusion that since Plaintiff's non-exertional limitations do not significantly compromise his capacity for the full range of light work, Plaintiff is therefore not found to be disabled, and (2) whether Plaintiff's case required the use of a vocational expert in order to determine which jobs Plaintiff retains the ability to perform before the ALJ made his final decision regarding his disability status.

In the instant case, the ALJ reached his final decision regarding Plaintiff's non-exertional impairment by concluding that from the first date that the records shows a clear profile of Plaintiff's emotional status up to the date that he was last insured for disability purposes, Plaintiff did not show an emotional impairment which lasted 12 consecutive months. The ALJ reaches this conclusion by taking into con-

sideration the fact that after Plaintiff was discharged from the hospital on July 29, 1998 (almost one (1) month after his insured status had expired) he was diagnosed as stable and the symptomatology for which he was hospitalized was controlled. The ALJ further concludes that since said impairment was considered to be of a slight to moderate nature it was not preventing the claimant from engaging in substantial gainful activity.

 First the Court deems necessary to state that since the incident regarding Plaintiffs apparent suicide attempt and hospitalization on July 12, 1998, occurred after his insured status had expired on June 30, 1998, said incident cannot be used by Plaintiff to prove the extent of his disability. Therefore, the Court finds that said incident shall not be used to determine whether or not Plaintiff's disability would last 12 months or more as used by the ALJ in his conclusion. Notwithstanding, even if we indulge the ALJ's conclusion that when the Plaintiff was released from the hospital, it was recommended that he undergo further psychiatric treatment, the Court finds that the fact that Plaintiff required further treatment clearly indicates that his mental illness would persist beyond the day when he was released from the hospital. In other words, the fact that he was diagnosed as stable but was still recommended psychiatric treatment, does not provide sufficient evidence to conclude that his emotional impairment would not last 12 consecutive months.

Second, in the evidence of record Dr. Santos Carlo's opinion itself, which the ALJ relied upon, shows that the Plaintiff's prognosis was poor. Clearly, a poor prognosis does not indicate that Plaintiff's mental illness was expected to have a short life-span, even during the time period prior to his suicide attempt. Additionally and most critical, Dr. Santos Carlo concluded

that Plaintiff's emotional disorder interfered with his entire ability to function. *See* Social Security Transcript, pg. 305.

As aforementioned, while Plaintiff's suicide attempt itself occurred after the end of the acceptable period for Social Security disability determination, it is clear from the record that even within the confines of the acceptable period, his mental illness was expected to last for at least twelve (12) months as contemplated by the Act. This is evident from the poor prognosis given by Dr. Santos Carlo as well as her conclusion that Plaintiff's **condition interfered with his entire ability to function.**

 Third, the record shows that Plaintiff's mental condition affected his ability to concentrate, accept instructions, work with others and even complete a workday without symptoms. Clearly, the Plaintiff's non-exertional mental impairment would affect his ability to perform in the workplace when the record shows that he had difficulty performing the basic workplace functions listed above. After carefully reviewing the record, the Court finds that the ALJ's conclusion that Plaintiff's capacity has not been significantly compromised by his non-exertional limitations, is not supported by the record. Especially when Dr. Santos Carlo's conclusion was that Plaintiff's **emotional disorder interfered with his entire ability to function.**

Therefore, the ALJ's denial of disability based solely on the Grid was not appropriate since Plaintiff's non-exertional impairment interfered with his entire ability to function. *See Ortiz*, 890 F.2d at 524. The ALJ should have considered vocational evidence.

In cases where a nonexertional impairment "significantly affects claimant's ability to perform the full range of jobs" he is otherwise exertionally capable of

performing, *Lugo,* 794 F.2d at 17, "the Secretary must carry his burden of proving the availability of jobs in the national economy by other means," *Gagnon,* 666 F.2d at 665 n. 6, typically through the use of a vocational expert. See, e.g., *Burkhart v. Bowen,* 856 F.2d 1335, 1340–41 (9th Cir.1988); *Burgos Lopez,* 747 F.2d at 42; *Sherwin,* 685 F.2d at 3.

*See Id.*

■ Fourth, following the most recent trend in First Circuit jurisprudence, the Court deems proper to analyze the ALJ's determination using the two-pronged standard for the exclusion of a vocational expert as found in *Geoffroy v. Secretary of Health & Human Services,* 663 F.2d 315 (1st Cir.1981). First, the Court finds that it is within the ALJ's discretion under the substantial evidence standard to implicitly take administrative notice of the availability of light work in the Puerto Rican economy. *See e.g. Hernandez,* 493 F.2d at 1123; *see also Small v. Califano,* 565 F.2d 797, 800–802 (1st Cir.1977). Therefore, the first prong of this standard is easily satisfied.

However, the second prong presents a different story. The *Geoffroy* standard allows an assumption of residual capacity and administrative notice of the general availability of employment options ONLY where there is a particularized showing[5] that the claimant could actually perform the type of work of which the ALJ takes notice. *See Geoffroy,* 663 F.2d at 317. Here, the evidence on the record shows that, due to his mental limitations, the

Plaintiff exhibits moderate impairment in the majority of the basic demands of unskilled work articulated in *Ortiz.* See Ortiz, 890 F.2d at 526 (Finding that these demands include "the abilities ... to **understand,** carry out, and **remember** simple instructions; to **respond appropriately** to supervision, coworkers, and usual work situations; and to deal with changes in routine work setting.")(*emphasis ours*). Even without citing the evidence on record from Dr. Umpierre's report, Dr. Santos Carlo's report shows that Plaintiff exhibited anxiety and that his concentration and abstractions were poor. In fact, Dr. Santos Carlo stated that the Plaintiff required psychiatric treatment after she concluded that "his emotional disorder does interfere with his entire ability to function." *See* Social Security Transcript, pg. 305.

■ When one examines the record as a whole and reads Dr. Umpierre's report, a dismal picture begins to form. This medical expert reiterated Dr. Santos Carlo's concerns regarding Plaintiff's ability to concentrate and vocalized additional concerns regarding Plaintiff's ability to perform in a work environment. Especially troubling was the doctor's statement that Plaintiff was moderately limited in the ability to complete a normal workday or workweek without interruptions, created by psychological based symptoms. Here, the ALJ's determination that these difficulties were insufficient to merit review by a vocational expert clearly fails to comply with the sufficient evidence standard, based on substantial evidence on the record.[6] *See Rodriguez v. Secretary of*

---

5. *See Taylor v. Weinberger,* 512 F.2d 664, 668–669 (4th Cir.1975)(Finding that the Secretary may take administrative notice of the existence of jobs within the economy, but "facts pertaining to the capacity of a specific individual can be supplied only by particularized proof".).

6. Compare the following cases: *Hernandez,* 493 F.2d 1120 (finding that the Secretary did NOT show that the claimant could perform the type of work which was being administratively noticed); *Small,* 565 F.2d at 801–02 (remanding where the ALJ failed to make findings regarding the personalized ability of

*Health and Human Services*, 647 F.2d at 222. In fact, a substantial portion of the evidence on the record shows that due to his mental impairment, Plaintiff was NOT able to perform the light work which the Grid recommends for persons with his background and type of exertional impairment rather than demonstrating a particularized showing that he can perform these alternate occupations.

■ Therefore, the Court finds that since the ALJ's conclusion that Plaintiff's capacity for the full range of light work was not significantly compromised by his additional non-exertional limitation, is not supported by the substantial evidence of record, the ALJ's denial of disability based solely on the Grid was not appropriate. Moreover, taking into consideration Dr. Santos Carlo's conclusions that Plaintiff's prognosis was poor, that his non-exertional impairment interfered with his entire ability to function and that he required psychiatric treatment, constitutes sufficient evidence to warrant the use of a vocational expert in this case.

## IV. Conclusion

■ For the reasons stated above, the Court finds that the substantial evidence of record supports the conclusion that Plaintiff's mental condition was expected to last for at least twelve (12) months as mandated by the Act. Additionally, the Court finds that, by showing that he was not currently employed or capable of returning to past employment, Plaintiff made a prima facie case of disability, thereby shifting the burden to Defendant

to prove that Plaintiff retained a residual capacity for employment. Notwithstanding, the Court finds that the ALJ's conclusion that, Plaintiff's capacity for the full range of light work was not significantly compromised by his additional non-exertional limitation, was not supported by the substantial evidence of record. Moreover, the Court finds that pursuant to the substantial evidence of record, Plaintiffs mental condition (non-exertional limitation) "significantly affects [Plaintiff's] ability to perform the full range of jobs he is otherwise exertionally capable of performing". *See Ortiz*, 890 F.2d at 524 (*emphasis ours*). Especially when Plaintiff's non-exertional limitation was considered by Dr. Luis Umpierre mostly as moderately limiting and by Dr. Madeline Santos Carlo as interfering with his entire ability to function, with a poor prognosis and in need of further psychiatric treatment.

> We caution that an ALJ typically should err on the side of taking vocational evidence when such a limitation is present in order to avoid needless agency rehearings. And should an ALJ determine that the Grid can be relied on in such a case, we urge that the evidentiary support for that decision be enumerated more clearly and in greater detail than was done here in order to avoid needless remands for subsidiary fact-finding.

*See Ortiz*, 890 F.2d at 528.

For the reasons state above, the Court chooses to "err on the side of taking vocational evidence", in order to determine whether in this case the Plaintiff in fact

claimant to perform a job); *Candelaria*, 195 Fed.Appx. 2 (finding that the ALJ's own assumption that claimant's ability to perform the full range of light work remained unaffected by his secondary limitation was unfounded); *Roman*, 114 Fed.Appx. at 412 (finding that a vocational expert was required where attending physicians diagnosed the

claimant as moderately depressed, with poor memory and concentration skills); *Perez Torres v. Secretary of Health & Human Svcs.*, 890 F.2d 1251, 1255 (1st Cir.1989)(finding that a vocational expert was unnecessary where "substantial evidence supports the conclusion that [Plaintiff's] mental condition was mild.")(*emphasis ours*).

had sufficient occupational options to find him not disabled, considering his non-exertional and exertional limitations. *See Id.* The instant case is hereby **REMANDED** to the Commissioner for the taking of evidence from a vocational expert. Judgement shall be entered accordingly.

**IT IS SO ORDERED AMENDING NUNC PRO TUNC OPINION AND ORDER DATED August 30th 2007.**