**Carmen M. CARRASCO, Plaintiff**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Civil No. 06–1880 (SEC).**

United States District Court, D. Puerto Rico.

Dec. 28, 2007.

Melba N. Rivera–Camacho, Melba N. Rivera Camacho & Assoc., Carolina, PR, for Plaintiff.

Ginette L. Milanes, United States Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

This is an action brought under 42 U.S.C. § 405(g), the "Social Security Act."

Plaintiff seeks review of the Commissioner of Social Security's ("the Commissioner") denial of social security benefits (Docket # 2). The Commissioner filed its Memorandum of Law in support of the decision to deny benefits (*see,* Docket # 11) and, Plaintiff filed her own Memorandum of Law (*see,* Docket # 12). After reviewing the parties' filings and the applicable law, the Commissioner's decision to deny Plaintiff disability benefits will be **REVERSED,** and this case will be **REMANDED** for further proceedings consistent with this opinion.

### Standard of Review

■ The scope of our judicial review of a Commissioner's final decision is limited both by statute and case law. *See* 42 U.S.C. § 405(g). Section 405(g) provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting, Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)), the United States Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401, 91 S.Ct. 1420; *see also, Tsarelka v. Secretary of H.H.S.,* 842 F.2d 529, 534 (1st Cir.1987). Moreover, the First Circuit has held that this determination of substantiality must be made on the record as a whole. *See, Ortiz v. Secretary of H.H.S.,* 955 F.2d 765, 769 (1st Cir.1991). Furthermore, written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence; however, these may serve as supplementary evidence for the Administrative Law Judge (hereinafter

the ALJ) to consider in conjunction with the examining physician's reports. *Irizarry–Sanchez v. Commissioner of Social Security*, 253 F.Supp.2d 216, 218 (D.P.R.2003)(hereinafter *Irizarry*). Lastly, "it is the Secretary's responsibility to choose between conflicting evidence." *Burgos López v. Secretary of H.H.S.*, 747 F.2d, 37, 41 (1st Cir.1984); *see also, Tremblay v. Secretary of H.H.S.*, 676 F.2d 11, 12(1st Cir.1982).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See, Bowen v. Yuckert*, 482 U.S. 137, 146–47, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is well settled law that a claimant is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *see e.g., Goodermote v. S.H.H.S.*, 690 F.2d 5, 6–7 (1st Cir.1982).

The five-step inquiry made by the ALJ in determining whether a claimant is disabled is the following. First, the ALJ asks: is the claimant currently employed? If so, he is not disabled; if he is not, then the ALJ must turn to the second question: does the claimant have a severe impairment (one which significantly limits his ability to perform work-related functions)? If not, then he is not disabled; if so, the ALJ must ask: does the claimant have an impairment equivalent to those contained in the regulations' Appendix I? If so, then he is automatically rendered disabled. If not, then the ALJ must determine if the claimant's impairment prevents him from performing work that he has done in the past. If the ALJ determines that the claimant cannot perform his past work, then he must determine if claimant's impairment will prevent him from performing other work of the sort found in the national economy. If the claimant cannot perform any such work, he is disabled. If he is capable of performing work available in the economy, then he is not disabled under the Social Security standards. *See, Goodermote*, 690 F.2d at 6–7.

As stated above, the burden is on the claimant to establish that he is disabled, and unable to return to his past work. *Id.*, at 7. However, if claimant meets this burden, then it is the Secretary's burden to show that there are other jobs in the national economy that the claimant can perform, notwithstanding his disability. *Id.; see also, Torres v. Secretary of H.H. S.*, 677 F.2d 167, 168 (1st Cir.1982); *González–Alemán v. Secretary of H.H.S.*, 86 F.3d 1146, 1996 WL 267275 (1st Cir.1996). In satisfying this burden, the Secretary may rely on a set of rules, referred to as Grids, which are basically a matrix "combining different permutations of the four essential factors set out in the statute (age, education, work, experience, and residual work capacity) and stating, as to each combination, whether a claimant with those characteristics is disabled or not disabled." *Vázquez v. Secretary of H.H.S.*, 683 F.2d 1, 2 (1st Cir.1982).

Where a claimant has only strength limitations, that is, exertional limitations, the ALJ may rely on the Grids to meet the burden of determining that there are jobs available for the claimant in the national economy which he can perform. *González–Alemán*, 86 F.3d 1146, 1996 WL 267275 at *2. However, if the claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs. *Id.* That is, considering that the Grid is based on a claimant's exertional capacities, "it can only be applied when a claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." *Rivera–Rivera v. Barnhart*, 330 F.Supp.2d 35 (D.P.R.2004)(*citing, Frustaglia v. Secretary of H.H.S.*, 829 F.2d 192 (1st Cir. 1987)). Therefore, in cases "where a non-exertional impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert." *Miranda–Monserrate v. Barnhart*, 520 F.Supp.2d 318 (D.P.R.2007)(internal citations omitted). However, "should a non-exertional restriction be found to impose no significant limitation on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." *Rivera–Rivera*, 330 F.Supp.2d at 37–38.

In considering whether a claimant's residual work capacity is reduced by non-exertional limitations (i.e. a mental impairment), the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. *See, Irlanda v. Secretary of H.H.S.*, 955 F.2d 765, 769–770 (1st Cir.1991). The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment and to deal with the changes in a routine work situation. *Id.* The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. *Id.* at 770.

Finally, an ALJ is a lay fact finder that lacks the expertise to make a medical conclusion, and, as such, "he cannot interpret raw, technical medical data." *Irizarry–Sanchez*, 253 F.Supp.2d at 219 (*citing, Rivera–Torres v. Secretary of H.H. S.*, 837 F.2d 4, 7 (1st Cir.1988); *Berríos v. Secretary of H.H. S.*, 796 F.2d 574, 576 (1st Cir.1986)).

**Factual and Procedural Background**

Plaintiff was born on June 6, 1956, has a limited education (she only completed ninth grade) and past work experience as a garment inspector and a shoe line inspector (Tr. 20). Plaintiff first applied for disability insurance benefits on February 12, 2003, claiming to be disabled since October 29, 2002 due to a back disorder, hypertension, and affective disorders. (Tr. 32–33). Her application was denied because the Commissioner concluded that she was able to return to her past work as a garment inspector. (Tr. 37). Plaintiff then requested reconsideration which was again denied. (Tr. 44). Thereafter, on November 19, 2003, Plaintiff requested a hearing before an Administrative Law Judge from the Social Security Administration. (Tr. 47). Pursuant to said request, the ALJ, Leonard Olarsch, set a hearing for July 18, 2005. (Tr. 48). After the hearing was held, on August 1, 2005, the ALJ issued a decision, whereby it concluded that, although Plaintiff was unable to perform any of her past relevant work, she still had a residual functional capacity to perform work at the light level of exer-

tion, and that her mental condition did not compromise her ability to perform this kind of work. (Tr. 20–30).

The ALJ in his decision found that Plaintiff's impairments (hypertension, C4–C5 disc protrusion, C5–C6 herniated disc, cervico-dorso-lumbar and hands strain, and mood disorder) were severe according to the social security regulations, that she was unable to perform her past work, and that she was a younger individual (45–49 years old), with a limited education and no transferable skills from any past relevant work. As such, the ALJ concluded that in view of Plaintiff's residual functional capacity to do light work, her age, education, and skills, the Medical Vocational Guidelines (a/k/a Grid) mandated a not disabled determination. (Tr. 30); *see also,* 20 CFR § 404, Subpart P., App. 2.

Plaintiff requested review by the Appeals Council, which denied review (Tr. 5–8). Thus, the ALJ's decision (Tr. 20–30) became the final decision of the Commissioner of Social Security in this case (Tr. 5). This appeal followed.

### The ALJ's Decision

The ALJ followed the five step inquiry into Plaintiff's application for benefits. He found that Plaintiff was incapable of performing her past work, but that she had the residual work capacity to do light work. *See,* Tr. 23–25. He further determined that Plaintiff's emotional condition was not as disabling as she alleged, and failed to elicit any severe intellectual dysfunction, personality deterioration or perceptual disturbances. Tr. 25. Although Appellant's treating physician concluded that she suffered from severe major depression and was unable to work, giving her a poor prognosis, the ALJ gave no controlling weight to his conclusion because the physician did not afford sufficient time for her to benefit from treatment. Tr. 26. The ALJ then concluded, based on the record, and his examination and observation of the Appellant during the hearing, that her emotional condition was not disabling. Tr. 26.

Appellant demurs. She argues that the ALJ erred in determining that she was able to perform light work because all of her conditions, which are supported by medical evidence, are pain producing and render her disabled to perform even that kind of work. She further contends that the ALJ, although free to resolve issues of credibility, is not free to disregard expert's opinions without good cause. Finally, she asserts that the ALJ was required to call a vocational expert as a witness in order to consider the impact of her non-exertional impairments (i.e. her mental conditions) on her residual functional capacity.

### Applicable Law and Analysis

Appellant's arguments on appeal may be framed into two general questions: (1) that the ALJ's residual functional capacity determination that she could perform light work is not supported by substantial evidence, and (2) that the ALJ erred in concluding, based on his lay opinion, that her mental condition did not render disabled. Because we agree with Appellant on her second argument, we will not address the issue of whether there is substantial evidence to support the ALJ's determination that she is able to perform light work. Let's see.

The record reveals that Plaintiff received psychiatric treatment in the East Neuropsychiatric Institute since June 17, 2003, with Dr. Angel E. Loyola Pérez, Psychiatrist. Tr. 167. As per Dr. Loyola's mental examination, dated August 11, 2003, Plaintiff had a low tone of voice, was logical, coherent and relevant. Tr. 167. However, he noted that Plaintiff suffered from mental blocks, auditory and visual hallucinations, poor concentration and

memory, self deprecatory ideas, and poor insight and judgment. *Id.* His diagnosis was Severe Major Depression, and his prognosis was "poor". *Id.* He stated that Plaintiff was under psychotherapy and pharmacotherapy consisting of Effexor, Clonazepam, Zoloft and Temazepan. *Id.* Finally, he states that Plaintiff was totally and permanently disabled from a social and emotional point of view, and that she could not work and should continue psychiatric treatment indefinitely. *Id.*

Another medical evaluation, performed by José E. Berríos Merced, Psychiatrist, on September 12, 2003, notes that Plaintiff had been receiving psychiatric treatment with Dr. Loyola, and that her last visit was in September 2003. Tr. 171. His evaluation shows that Plaintiff had reported drowsiness as a pharmacological side effect of her prescribed medications. *Id.* He states that Plaintiff had no history of psychiatric hospitalization, suicidal or homicidal attempts or addictions of any kind. *Id.* Plaintiff does have family psychiatric history on her mother's side. Tr. 172. His evaluation also reveals that Plaintiff needed supervision to take her medications and do the housework, and that her care, propriety and effectiveness are limited due to her mental and physical state. *Id.* It also states that Plaintiff showed no interest in visiting her friends and neighbors, nor did she enjoy partaking in pleasurable activities. *Id.* She did not go to church as she used to, and had partial tolerance to daily stress. *Id.*

Dr. Berríos also concluded that Plaintiff's attention span was normal, that she was oriented, that her immediate memory was preserved, and that her concentration and abstraction were good. Tr. 172. He also found that her judgment was partial, that she did not answer all questions on general knowledge and that she was not assertive when solving daily situations.

Tr. 173. His diagnosis was "major depression, only episode, mild", and his prognosis was guarded. *Id.* He also found that she was able to manage her funds. *Id.*

The record further shows that Plaintiff was referred by SISMAD to APS Healthcare on October 20, 2004 for because Plaintiff had indicators of depression and anxiety and recurrent depression. Tr. 263, 273. The record at SISMAD shows that Plaintiff felt lonely, unhappy, and disoriented at home and away from home. Tr. 268. It also shows that she had auditory hallucinations on occasions. Tr. 268. The evaluation performed of Plaintiff on October 20, 2004, revealed that she reported auditory hallucinations, felt tired all the time, had no appetite, had no self love, and had problems communicating with others. Tr. 284–285. She was diagnosed with severe depression. Tr. 284.

The record also contains progress notes of Plaintiff's treatment at CMF (Centro de Medicina de Familia) from July, 2004 to June, 2005. Tr. 305–326. On July 7, 2004 Plaintiff was found very anxious and nervous, with some crying spells during the interview. Notes from February 2, 2005, show that Plaintiff expressed mild relief from crying spells and no suicidal or homicidal ideas. Tr. 322. However, Plaintiff was still diagnosed with depression, although it was now a moderate severe depression. She was still taking medication. *Id.* February 23, 2005 found Plaintiff with less crying spells mostly related to a legal issue with her ex husband and her daughter's pension. Tr. 320. However, the diagnosis was still moderate severe depression. *Id.* On March 9, 2005, she was able to express worries without crying, had no suicidal or homicidal thoughts, and was mainly worried about her daughter's pension. Tr. 319. The diagnosis was changed to a mild depression. *Id.* On April 6, 2005, Plaintiff was, then again, diagnosed with

mild depression. Tr. 316. June 1, 2005 painted a different picture; Plaintiff was again unable to sleep, sad and worried and her diagnosis worsened as her depression was again moderate severe. Tr. 315.

As stated above, a hearing was held where Plaintiff testified before the ALJ. Tr. 333–354. There, the ALJ focused his inquiry on Plaintiff's exertional impairments (i.e. her complaints regarding pain on the neck, knees, hands, among others). However, the ALJ's inquiry regarding Plaintiff's mental condition was limited to the following:

Q. Let me—let me ask you this. Do you have a mental problem also?

A. Yes.

Q. Because the same day you said that the depression was mild. Has your depression improved since it started?

A. Yes, it has improved.

The ALJ also asked Plaintiff about her daily chores:

Q. What about your mother?

A. My mother is the one who prepares the meals.

Q. Every day and weekends?

A. No my daughter does it on weekends.

Q. Your daughter?

A. Yes.

Q. Your mother comes every day of the week?

A. Not on vacation she does not.

Q. Okay. So who takes care of your food, your cooking?

A. My daughter.

Q. Do you ever cook?

A. No, I do not.

Q. Do you ever wash dishes?

A. No, I do not.

Q. I see. Do you ever iron?

A. No, I do not.

Q. Do you ever sweep, or mop or vacuum?

A. No, I do not.

Q. No. Wash clothes or make the beds?

A. No, I do not.

Q. Do you go grocery shopping?

A. No.

Q. Do you go to church?

A. No, I do not.

Q. Did you go to church before you had your problems?

A. Yes.

Q. How often did you go before?

A. Every week.

Q. Every week, and now you do not go at all?

A. No.

Q. Never?

A. Never.

Q. Do you watch t.v.?

A. No, I do not.

Q. Do you listen to the radio?

A. Yes, that I do.

Q. What do you listen to?

A. Different radio stations.

.    .    .    .    .

Q. All right. Do you drive?

A. No, I do not.

.    .    .    .    .

Q. Do you have any hobbies?

A. No, I do not.

Despite the medical record showing Plaintiff's continuous diagnosis of depression, the ALJ made no substantial inquiry on this point during the hearing. Moreover, Plaintiff's testimony was consistent with the notes found on her medical record

to the effect that she needed help with basic activities and that she did not enjoy otherwise pleasurable activities. Notwithstanding Plaintiff's medical record, and Dr. Loyola's medical opinion that Plaintiff was unable to work, the ALJ concluded that her mental findings failed to elicit any severe intellectual dysfunction, personality deterioration or perceptual disturbances. Tr. 25. He also found that there was no evidence of "deterioration in personal habits, significant constriction of interest; marked restrictions in activities of daily living or inability to deal with the social environment ..." Tr. 26. He further stated that he could give no controlling weight to Dr. Loyola's medical opinion because he did not afford sufficient time to respond to treatment. We believe that the ALJ erred in substituting Dr. Loyola's medical opinion with his layman opinion and in disregarding Plaintiff's medical record at the CMF and her testimony during the hearing so lightly. We explain.

■ When a claimant has met the initial burden, as Plaintiff did here, of establishing that she cannot return to her previous work, the burden of proof shifts to the Secretary to prove that there are sufficient numbers of jobs in the national economy that the claimant can perform. *Gonzalez–Alemán*, 1996 WL 267275, *2. Although the Secretary may usually meet this burden by placing the claimant within one of the subcategories contained in the social security regulations (the Grids), "where a claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs." *Id.* In these circumstances, the testimony of a vocational expert should be procured. *Id.; see also, Padilla v. Barnhart, Commissioner of Social Security*, 186 Fed.Appx. 19, 21 (1st Cir.2006) (unpublished)("Exclusive reliance on the Grid is not appropriate in mixed exertional/non-exertional cases");

*Vázquez–Rosario v. Barnhart, Commissioner of H.H. S.*, 149 Fed.Appx. 8, 10 (1st Cir.2005) (unpublished)(same). The reason behind procuring vocational evidence is that the fact that a claimant can, according to the Grids, technically perform a particular level of work, does not automatically mean that she can function in the workplace. *See, Wingo v. Bowen, Secretary of H.H.S.*, 852 F.2d 827, 831 (5th Cir.1988). An ALJ must consider the aggregate impact of all of a claimant's ailments. *Id.* The ALJ should have procured the evidence of a vocational expert to determine whether Plaintiff's RFC was further diminished by Plaintiff's non-exertional (not related to strength) limitations, to wit, her depression, and overall mental condition.

Moreover, as stated above, when a claimant has exertional plus non-exertional impairments, the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. *See, Irlanda Ortíz*, 955 F.2d at 769–770. The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment and to deal with the changes in a routine work situation. *Id.* The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. *Id.* at 770. We find no substantial evidence in the record to support a finding that Plaintiff's was able to do all this. To the contrary, the record shows in numerous occasions, that Plaintiff had poor judgment, was unable to solve simple daily situations, was unable to do any house chores, did not, on occasions, keep her appointments, and felt nervous, anxious, and suffered of frequent crying spells and

hallucinations. *See*, Tr. 167, 171–173, 263–284 & 305–326.

■ Furthermore, the ALJ also erred in disregarding completely Dr. Loyola's conclusion that Plaintiff was unable to work. An ALJ must give considerable weight to treating physician's opinions in determining disability, and may only disregard these with a showing of good cause, namely: (1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record. *See, Sánchez v. Commissioner of Social Security*, 270 F.Supp.2d 218, 221 (D.P.R.2003). We find none of these factors present in this case. To the contrary, we find that ALJ's conclusion that Plaintiff's mental condition was not as severe as alleged is wholly unsupported by the record. Moreover, we cannot say, based on the record before us, that there is substantial evidence to support this finding. To the contrary, we find that no reasonable mind, when reviewing the record as a whole, could accept the ALJ's reasoning as adequate to support a conclusion. *Irlanda Ortíz*, 955 F.2d at 769.

As such, the ALJ's decision is hereby **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion. We note that by doing so we are not encouraging the ALJ to make a finding of disability. The ALJ must, however, further investigate, through vocational expert testimony, the extent to which Plaintiff's mental condition might impact her ability to function in the workplace.

**SO ORDERED.**